FULANA DE TAL y SUTANA DE CUAL, demandantes y recurrentes, *v.* DEMANDADO A, demandado y recurrido.

*Número:* CE-94-878 *Resuelto:* 13 de junio de 1995

612

*Juan Rafael González Muñoz* y *Doris Quiñones Tridas*, abogados de las recurrentes; *Edwin Prado Galarza* y *Juan Nieves Cassas*, abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Este recurso plantea la controversia en cuanto a si unas demandantes que acuden al tribunal para proteger su derecho a la intimidad tienen derecho a que la prensa sea excluida de sala durante la presentación de unas películas en las cuales aparecen sosteniendo relaciones sexuales con el demandado.

Las demandantes recurrentes, Fulana de Tal y Sutana de Cual, recurren de la determinación del Tribunal de Primera Instancia, Sala de San Juan (Hon. Gilberto Gierbolini, Juez Superior), que denegó en parte su solicitud de que el público y la prensa fueran excluidos de Sala al disponer que la prensa tenía derecho a permanecer allí. Examinados tanto el interés de las demandantes en que se les proteja su derecho a la intimidad, como el de la prensa a estar presente en los juicios civiles, a la luz de los hechos particulares de este caso revocamos en parte el dictamen recurrido.

I

Los hechos pertinentes a esta controversia surgen de la relación personal que existió entre las demandantes recurrentes y el demandado recurrido durante el período de octubre de 1989 hasta enero de 1991. Sutana de Cual sostuvo una relación amorosa con el demandado desde octubre de 1989 hasta octubre de 1990. Por su parte, Fulana de Tal sostuvo una relación amorosa con éste desde marzo de 1990 hasta enero de 1991. Durante el período de duración de ambas relaciones, las demandantes recurrentes tuvieron relaciones sexuales con el demandado, relaciones que, en varias ocasiones, fueron grabadas por éste, alegadamente sin el consentimiento de ellas.

Al enterarse, a principios de 1993, de la existencia de dichas películas, así como del hecho de que éstas habían sido copiadas y distribuidas, Fulana de Tal y Sutana de Cual presentaron una acción de daños y perjuicios contra el demandado por violación a su dignidad, integridad personal e intimidad.[1] Alegaron, en esencia, que la grabación

---

[1] Inicialmente, las demandantes recurrentes incluyeron como demandadas a la actual novia del demandado recurrido y a la exesposa del actual compañero de Sutana de Cual. Sin embargo, desistieron de dichas reclamaciones antes de comenzar el juicio en su fondo.

y posterior reproducción de dichas películas sin su consentimiento les había causado daños irreparables.

Simultáneamente, las demandantes presentaron una moción para solicitar un *injunction* preliminar y permanente para que se consignaran en el tribunal todas las copias de las películas pertinentes y no se divulgara ni su contenido ni la identidad de las partes. El tribunal de instancia denegó dicha moción y determinó proseguir con el juicio en sus méritos. Luego de concluir el descubrimiento de prueba, se señaló la vista en su fondo para el 7 y 8 de diciembre de 1994.

La mañana del 7 de diciembre se presentaron en la Sala donde se iba a llevar a cabo la vista, no sólo las partes con sus respectivos abogados, sino también miembros de la prensa y otras personas. Al percatarse de esto, las demandantes solicitaron al Tribunal Superior que, al momento de presentar en evidencia las películas pertinentes, la prensa y el público en general desalojaran la Sala. Como señalamos anteriormente, el tribunal determinó que el público tendría que desalojar la Sala durante la filmación, mas no así la prensa.

A solicitud de las demandantes, el tribunal de instancia suspendió la vista para darles la oportunidad a éstas de recurrir en auxilio de jurisdicción a este Tribunal. El mismo día las demandantes acudieron a este Foro y solicitaron la paralización de los procedimientos en instancia hasta tanto se revisara dicha determinación.

El 8 de diciembre expedimos el auto y paralizamos los procedimientos. Mediante orden al respecto, le concedimos a la parte recurrida diez (10) días para someter su posición en cuanto a la solicitud de *certiorari*. Luego de revisar la comparecencia del demandado, estamos en posición de resolver.■ Revocamos en lo que respecta al derecho de la

prensa a estar presente en Sala durante la presentación de las películas.

## II

Históricamente los procedimientos judiciales en nuestra jurisdicción han estado abiertos al público y a la prensa, y existe una fuerte presunción a favor de la apertura de éstos. Aunque nuestra Constitución sólo garantiza expresamente la apertura de los procedimientos de naturaleza criminal, existe una garantía similar implícita respecto a los procedimientos de naturaleza civil, consagrada en las cláusulas del debido proceso de ley y la libertad de expresión y prensa de nuestra Carta de Derechos. J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 422. Además, dicha garantía ha sido extendida expresamente a los procedimientos de naturaleza civil mediante la Regla 62.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.[3]

Nuestra tradición de apertura obedece no sólo a razones históricas, sino también al propósito funcional de garantizar que la ciudadanía esté informada adecuadamente de lo que ocurre en los tribunales y que los procedimientos se lleven a cabo conforme la ley. Tal apertura es, en otras palabras, consustancial a nuestro sistema democrático de gobierno. E.L. Chiesa, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, Sec. 13.2, págs. 193–194.

Aunque la apertura de los procedimientos judiciales de naturaleza civil nunca ha sido cuestionada en nuestra ju-

---

[3] Dicha Regla dispone, en lo pertinente, lo siguiente:
"Todas las vistas de los casos en sus méritos serán celebradas en corte abierta, en un salón del tribunal, salvo que debido a la naturaleza del procedimiento el tribunal dispusiere lo contrario." 32 L.P.R.A. Ap. III.

risdicción, lo cierto es que el derecho del público y de la prensa a tener acceso a los tribunales sólo ha sido considerado por este Foro dentro del contexto de procedimientos de naturaleza criminal. Véanse, *e.g.: El Vocero de P.R. v. E.L.A.*, 131 D.P.R. 356 (1992); *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299 (1991). Aun en estos casos, los pronunciamientos al respecto no han formulado unos criterios precisos en torno al alcance de este derecho. Ante esta realidad, y únicamente por su valor ilustrativo, consideramos prudente examinar con brevedad la trayectoria jurisprudencial norteamericana correspondiente a este asunto.

## III

En *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), el Tribunal Supremo federal sostuvo que el público y la prensa tenían derecho a estar presentes en los procedimientos judiciales de naturaleza criminal. Aunque reconoció que la Constitución federal no garantizaba tal derecho explícitamente, concluyó que éste estaba firme e históricamente establecido en el sistema de justicia angloamericano y era consustancial al propósito primordial de la primera enmienda, el cual consiste en salvaguardar la discusión pública y preservar la pureza de los procedimientos judiciales y del Gobierno en su totalidad. Íd., pág. 569. Si bien al llegar a dicha conclusión el Tribunal aclaró que el derecho a tener acceso a los procedimientos judiciales de naturaleza civil no estaba ante su consideración, hizo la salvedad de que "históricamente, tanto los procedimientos civiles como criminales han estado presuntamente abiertos al público", dejando entrever, por lo tanto, que de surgir una controversia de esta naturaleza en el futuro, resolvería del mismo modo. (Traducción nuestra.) Íd., pág. 580, esc. 17.

Posteriormente, en *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), el Tribunal Supremo am-

plió las expresiones vertidas en el caso de *Richmond Newspaper, Inc. v. Virginia*, supra, al establecer que, si bien el derecho a tener acceso a los tribunales no era absoluto, toda limitación a éste estaría sujeta a un escrutinio estricto. A esos efectos, el Tribunal dispuso que el derecho de acceso a los procedimientos criminales podría restringirse siempre que ello fuera necesario para proteger un interés apremiante del Estado y la restricción no fuera más amplia de lo necesario para servir ese interés. Íd., págs. 606–607.

Utilizando la aseveración hecha por el Tribunal Supremo en *Richmond Newspaper, Inc. v. Virginia*, supra, con respecto a los procedimientos de naturaleza civil como punto de partida, varios tribunales de inferior jerarquía —así como un sinnúmero de comentaristas— han ido un paso más allá para extender estos señalamientos expresamente a los procedimientos de naturaleza civil. Según algunos, aunque la presencia del público en los procedimientos judiciales de naturaleza civil podría parecer menos necesaria que su presencia en los procedimientos de naturaleza criminal, lo cierto es que en ambos casos existe el mismo interés público en estar adecuadamente informado sobre lo ocurrido en Sala y en velar porque dichos procedimientos se lleven a cabo conforme a la ley. El hecho de que muchos casos civiles encierren disputas íntimas no significa que el efecto de las decisiones judiciales se limite únicamente a las partes directamente involucradas, o que el público no tenga interés en conocer cómo se ventilan las controversias, para de este modo asegurarse de que se siga un procedimiento uniforme para todas las personas. Además, el acceso a los procedimientos judiciales no sólo promueve la libre discusión de lo que ocurre en una de las tres (3) ramas del Gobierno, sino que garantiza también la legitimidad y confiabilidad de sus decisiones. J.L. Nowaczewski, *The First Amendment Right of Access to Civil Trials After Globe Newspaper Co. v. Superior Court*, 51 U.

Chi. L. Rev. 286, 297 (1984). En otras palabras, dichos comentaristas han dispuesto que:

> [t]o except civil suits from the open trial guarantee ... would defeat the goals of informed public discussion and self-governance protected in *Globe*. Many civil suits concern the "vindication of constitutional or statutory policies" the proper resolution of which is as important to the public as is the punishment of serious crime. ... Moreover, the impact of such suits frequently extends beyond the parties to the public at large.
>
> Even where a particular civil suit does not directly affect the public at large, the judiciary remains a branch of government and its conduct of civil litigation is a matter "relating to the functioning of government," a subject about which the public has a right to be informed. ... [Also] public presence at trials aids accurate factfinding, fosters an appearance of fairness and serves as a check on abuse. These benefits are not diminished simply because the underlying charge is civil and not criminal. (Escolios omitidos.) Nowaczewski, *supra*, págs. 297–298.

A tenor con esta postura, varios tribunales han procedido a adoptar no sólo el estándar de escrutinio estricto, sino también una serie de criterios utilizados por el Tribunal Supremo federal en los casos criminales anteriormente discutidos para determinar si se cumple con dicho estándar. Véanse: *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3er Cir. 1984); Nowaczewski, *supra*, pág. 298; Anotación, *Public Access to Records and Proceedings of Civil Actions in Federal District Courts*, 96 A.L.R. Fed. 769 (1990); Anotación, *Propriety of Exclusion of Press or Other Media Representatives from Civil Trial*, 79 A.L.R.3d 401 (1977).

■ Según estos criterios, al examinar si se justifica la limitación del derecho de acceso del público y la prensa a los procedimientos civiles, debe evaluarse: (a) si quien solicita tal limitación ha demostrado que el estado posee un interés apremiante en que se establezca dicha limitación, y (b) si el solicitante ha probado que no existe una manera menos onerosa de limitar tal derecho. Quien invoque tal limitación tendrá el peso de la prueba, por lo que le corres-

ponderá demostrar específicamente que su interés merece protección estatal y que posee justa causa para ello. *Publicker Industries, Inc. v. Cohen*, supra, págs. 1070–1071. Para establecer justa causa deberá demostrar "que la divulgación [del procedimiento al público en general] le causará un daño claro y serio a la parte que solicita la exclusión". (Traducción nuestra.) Íd., pág. 1071.

Los tribunales que han procedido a adoptar estos criterios han determinado que asuntos como la seguridad nacional, la preservación de secretos de negocio, la protección de menores y la preservación de la intimidad constituyen intereses apremiantes que justifican una limitación al derecho de acceso a los procedimientos judiciales de naturaleza civil. Véanse, *e.g.: Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273 (S. D. N.Y. 1982); *Matter of Robert M.*, 439 N.Y.S.2d 986 (1981); *State ex rel. English v. McCrary*, 328 So. 2d 257 (1976); *Barron v. Florida Freedom Newspapers*, 531 So. 2d 113 (1988). Véase, además, Nowaczewski, *supra*, pág. 299.

■ Consideramos persuasivos tanto los planteamientos relativos al hecho de que resulta necesario que los procedimientos civiles estén abiertos al público, como los criterios expuestos en *Publicker Industries, Inc. v. Cohen*, supra, para determinar si una solicitud para limitar el derecho de acceso a un procedimiento judicial cumple con el requerido estándar de escrutinio estricto.

Acogemos también los planteamientos expuestos por los diversos tribunales estatales que han adoptado dichos criterios respecto a que existen ciertos intereses apremiantes que justifican el que se limite tal derecho. Véase, *e.g., State ex rel. Gore Newspapers Company v. Tyson*, 313 So. 2d 777 (1975). Sin pretender hacer una enumeración taxativa de estos intereses, mencionamos, por ejemplo, el derecho a la intimidad, la protección de los menores y la preservación de secretos de negocio como casos en los cuales existen claramente intereses apremiantes que justifican la limitación

del acceso del público a los procedimientos judiciales de naturaleza civil.

■ Finalmente, consideramos menester aclarar que nuestra posición no menoscaba la alta jerarquía del derecho a la intimidad en nuestro ordenamiento jurídico, sino que reconoce su coexistencia con otro derecho igualmente medular y esencial en nuestra vida democrática; esto es, la libertad de acceso a los procedimientos judiciales. Sabido es que existen diversos derechos constitucionales, todos merecedores de tutela jurídica, que en la dinámica de la convivencia social frecuentemente resultan antagónicos. Como dispusimos en *E.L.A. v. Hermandad de Empleados*, 104 D.P.R. 436, 437 (1975):

> [l]os derechos y deberes de los seres humanos no constituyen usualmente imperios de fronteras precisas e inmutables. Chocan a menudo entre sí, por el contrario, e importa definir sus lindes y efectuar acomodos, situación a situación, conforme a los postulados y valores de una sociedad cambiante.

■ Así como en nuestra escala de derechos constitucionales figura de forma prominente el derecho a la intimidad, se manifiesta también el de acceso a los procedimientos judiciales —criminales o civiles— pues como hemos dicho, éste es consustancial al debido procedimiento de ley y a la libertad de expresión y de prensa. Ciertamente, el interés apremiante del Estado en que sus ciudadanos conozcan y fiscalicen el desarrollo de los procedimientos judiciales valida el reconocimiento del derecho constitucional de acceso, prescrito en la Regla 62.2 de Procedimiento Civil, *supra*, y que se le confiera un alto sitial en el escalafón constitucional.

No cabe aquí distinguir entre procedimientos penales o civiles, y en virtud de ello, para reconocer o negar acceso; lo vital es viabilizar que el pueblo esté informado sobre éstos y fiscalice la actuación de sus gobernantes. El reconocimiento de ese derecho de acceso a los procedimientos va a la raíz de nuestra sociedad democrática pluralista.

■ Si bien existen circunstancias y situaciones que ameritan limitar el acceso público a los procedimientos judiciales, entre las que se encuentra el derecho a la intimidad, no puede afirmarse abarcadoramente que "el derecho a la intimidad", sin más, debe prevalecer sobre el acceso público a los procedimientos judiciales. La normativa —que aquí acogemos— consiste en que se pueda limitar el acceso si existe un interés apremiante que lo justifique y la restricción se ciñe a ese interés, sirve de guía adecuada para los jueces sopesar los intereses en conflicto y resolver a favor del acceso o, por el contrario, de la vista privada.

Si no estableciéramos esta guía, facilitaríamos el cierre de las puertas de los tribunales al público bajo el pretexto de que se está protegiendo alguna expresión del derecho a la intimidad, y fosilizaríamos eventualmente los derechos a la libertad de expresión y de prensa, convirtiéndolos en piezas de museo.

Examinada la doctrina prevaleciente sobre el derecho de acceso a los procedimientos judiciales, evaluemos si nos encontramos frente a un caso que justifique su limitación.

## IV

Según los criterios enunciados en *Publicker Industries, Inc. v. Cohen*, supra, toda persona que intente restringir el derecho del público y la prensa a tener acceso a un procedimiento de naturaleza civil tendrá que probar, en primer lugar, que el Estado posee un interés apremiante en limitar dicho acceso. Evaluemos si las demandantes cumplen con este requisito.

En apoyo de su solicitud, las demandantes establecen que el derecho de todo ser humano a su dignidad, intimidad e integridad personal constituye uno de los derechos constitucionales de mayor jerarquía en nuestro ordenamiento jurídico, y aluden a las Secs. 1 y 8 de nuestra Carta de Derechos que disponen que "[l]a dignidad del ser hu-

mano es inviolable" y "[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". L.P.R.A., Tomo 1, ed. 1982, págs. 257 y 282. Véase Petición de *certiorari*, pág. 4 (en adelante Petición). Véanse, además: *Pueblo v. Muñoz, Colón y Ocasio*, 131 D.P.R. 965 (1992); *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35 (1986); *P.R. Tel. Co. v. Martínez*, 114 D.P.R. 328 (1983); *E.L.A. v. P.R. Tel. Co.*, 114 D.P.R. 394 (1983); *Colón v. Romero Barceló*, 112 D.P.R. 573 (1982).

Las demandantes reconocen que el derecho a la intimidad no es absoluto y que existe una presunción de acceso a los tribunales a favor del público y la prensa. Sin embargo, aducen que, por las circunstancias particulares de su reclamación, su derecho a la intimidad, dignidad e integridad personal debe prevalecer sobre tal derecho. Por ende, solicitan que el tribunal proteja su derecho a la intimidad y, a modo de excepción, no permita la presencia del público y la prensa en el momento cuando se revele el contenido de las grabaciones en vídeo. Véase Petición, págs. 4–5.

En apoyo de tal contención, las demandantes citan el caso de *Arroyo v. Rattan Specialties, Inc.*, supra, págs. 61–62, en el cual dispusimos que las restricciones al derecho a la intimidad "sólo [deben] tolerarse cuando no existan medios menos drásticos para la protección de intereses apremiantes del Estado, y ... sólo cuando estén presentes garantías adecuadas, de forma tal que esta invasión se limite a lo que sea estrictamente necesario". Véase Petición, pág. 4.

Los argumentos esbozados por las recurrentes demuestran con claridad que el Estado posee un interés apremiante en salvaguardar, dentro de lo posible, el derecho de todo ser humano a su dignidad, intimidad e integridad personal. Éstos cumplen, por lo tanto, con el primer criterio de *Publicker Industries, Inc. v. Cohen*, supra.

## V

 Según el segundo criterio establecido en *Public-ker Industries, Inc. v. Cohen*, supra, quien invoque un derecho a limitar el acceso del público y la prensa a los procedimientos de naturaleza civil tiene que probar que no existe una alternativa menos onerosa para salvaguardar tal derecho.

Las demandantes aducen que su solicitud no pretende coartar el derecho de la prensa a "informar al pueblo [de] todos los extremos e interioridades de la reclamación", puesto que, mediante el testimonio de los testigos, la prensa podrá obtener dicha información "sin necesidad de tener que exponerlas a mayor agravio y ridículo dado el contenido sumamente íntimo de las grabaciones". Petición, pág. 5. En otras palabras, establecen que el perjuicio que pudiera sufrir la prensa al no estar presente durante la presentación de las películas es mínimo en comparación con el daño que sufrirían ellas con la presentación pública de las películas. Ello es así ya que, según ellas, la prensa conservaría el derecho de escuchar todos los testimonios en su totalidad, así como el resto de los procedimientos en los méritos, lo cual le permitiría informar adecuadamente al público sobre los acontecimientos en Sala.

Al salvaguardar el derecho de la prensa a estar presente durante el transcurso de los procedimientos, salvo durante la presentación de las películas, la propuesta de las demandantes satisface el requisito de demostrar que el método propuesto constituye la alternativa menos onerosa disponible para proteger su derecho a la intimidad.

Las demandantes tienen el deber adicional de probar que su interés merece protección estatal y que poseen justa causa para solicitar la restricción antedicha. Como dispusimos antes, las demandantes han establecido con claridad que, dada la jerarquía del derecho a la intimidad en Puerto Rico y el mínimo perjuicio que sufriría la prensa de no

estar presente durante la presentación de las películas, el derecho a la intimidad merece mayor protección en este caso. Véase Petición, págs. 4–5.

 En cuanto al requisito de justa causa, las demandantes han demostrado tenerla al establecer el daño claro y palpable que sufrirían de tener que exponer al escrutinio público uno de los momentos más íntimos y privados de todo ser humano. Véase Petición, pág. 5. Aunque, por su naturaleza tan íntima, en todo caso resulta humillante exponer los detalles de una relación sexual, es mucho más degradante observar en corte abierta la presentación en vivo de una relación sexual ocurrida en la intimidad de un hogar, por un tiempo prolongado y con lujo de detalles, que testificar sobre una relación de ese tipo, con el distanciamiento emocional que muchas veces conlleva recrear una situación pasada.

 A la luz del análisis que antecede, no cabe duda que nos encontramos ante una situación en la cual se justifica la limitación del derecho del público y la prensa a tener acceso a los procedimientos judiciales. La solicitud de las recurrentes en nada afectaría la capacidad de la prensa de escuchar el testimonio de todos los testigos; meramente impediría que la prensa observara de forma directa las películas y detallara su impresión del contenido específico de éstas.([4]) Además, no podemos olvidarnos del hecho de que

---

([4]) Resulta pertinente añadir que en la determinación recurrida el tribunal de instancia accedió a que el público desalojara la Sala durante la proyección de las películas, pero determinó que la prensa tenía derecho a permanecer en ella. Al así determinar, el tribunal le extendió mayores derechos a la prensa que al público en general, algo que, según el derecho vigente, no procede. Sabido es que el reconocimiento del derecho de la prensa a tener acceso a estos procedimientos criminales "inexorablemente [ha] conlleva[do] extender iguales derechos y privilegios a la ciudadanía en particular". *Oliveras v. Paniagua Diez*, 115 D.P.R. 257, 268 (1984). No podría ser de otro modo, puesto que la función de la prensa no es otra que servirle de instrumento al público y facilitarle información que de otro modo no puede o no desea compilar. *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153 (1986). Por lo tanto, si el tribunal entendió que no había impedimento constitucional alguno a que el público desalojara la Sala durante la proyección de las películas, entonces no debió concluir que sí lo había respecto a la prensa.

las demandantes comparecieron ante el Tribunal de Primera Instancia precisamente para vindicar su derecho a la intimidad, violentado mediante la filmación y su posterior reproducción no consentidas de unas películas de vídeo.[5] De presentarse dichas películas en corte abierta, frente al público o la prensa, su reclamo de intimidad se tornaría académico.[6] Ante el insignificante perjuicio que sufriría la prensa durante la presentación de las películas en controversia, poco servicio le haríamos a las demandantes si, en lugar de proteger su derecho a la intimidad, termináramos por violentarlo.

## VI

Para salvaguardar el derecho a la intimidad que cobija a las recurrentes y, al mismo tiempo, reducir al mínimo el inconveniente que pudieran sufrir el público y la prensa de tener que entrar y salir continuamente de Sala cada vez que se presenten las películas, consideramos prudente que la presentación de las películas en controversia se lleve a cabo mediante una vista en cámara con las partes pertinentes.

Como dispusimos antes, nuestra Regla 62.2 de Procedimiento Civil, *supra*, sobre las vistas y órdenes en Cámara, dispone que las vistas en los méritos serán celebradas en corte abierta salvo que, por la naturaleza del procedimiento, el tribunal disponga lo contrario. En dichos casos el tribunal podrá celebrar la vista en su despacho o

---

[5] El demandado recurrido aduce que al presentar su demanda, las demandantes recurrentes renunciaron a toda expectativa de intimidad. En apoyo de dicha contención, cita una serie de casos estatales que tratan exclusivamente de demandas por impericia médica. Los casos son claramente distinguibles.

[6] Sabido es que "[l]os tribunales pierden su jurisdicción sobre un caso por academicidad cuando ocurren cambios durante el trámite judicial de una controversia particular que hacen que ésta pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia". *C.E.E. v. Depto. de Estado*, 134 D.P.R. 927, 935 (1993).

en otro lugar sin que sea necesario que comparezcan el secretario u otros funcionarios.

La vista en cámara suele ser una alternativa comúnmente acogida no sólo en nuestra jurisdicción, sino también en otras jurisdicciones una vez se determina que existe un interés apremiante del Estado que justifique la limitación del derecho de acceso a los tribunales. Véanse, *e.g.*: Art. 8 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2208; Anotación, *In camera trial or hearing and other procedures to safeguard trade secret or the like against undue disclosure in course of civil action involving such secret,* 62 A.L.R.2d 509 (1958). Mediante este procedimiento se busca preservar la integridad del secreto (*e.g.* de negocio o nacional), o derecho (*e.g.* a la intimidad) en controversia. Se suele recurrir a él sólo en casos en que éste sea esencial para la administración de la justicia puesto que no hacerlo equivaldría a negarle a la parte que posee dicho secreto o derecho un remedio efectivo. Anotación, *In camera trial or hearing and other procedures to safeguard trade secret or the like against undue disclosure in course of civiil action involving such secret,* supra, pág. 520. Consideramos que estamos frente a una situación que amerita el que se celebre una vista en Cámara. En ésta, el Tribunal Superior deberá seguir el procedimiento siguiente:

(1) Antes de celebrar la vista en su fondo, el tribunal de instancia citará a las partes con sus respectivos abogados a una reunión en Cámara.

(2) En dicha reunión se presentarán las películas en su totalidad.

(3) Durante el transcurso de las películas, las partes identificarán por segmentos aquellas secciones a las cuales deseen hacer referencia en la vista en su fondo.

(4) Al concluir las películas, el tribunal hará constar lo acontecido en la vista mediante minutas. Estas podrán ser

utilizadas por las partes durante la vista en su fondo, de así desearlo.

(5) De surgir alguna controversia durante la vista en su fondo, el tribunal tendrá discreción para tomar cualquier otra medida adicional que considere prudente, siempre que dicha medida sea cónsona con los pronunciamientos anteriores para salvaguardar los derechos de las partes.

## VII

Resta evaluar, por último, la posición del demandado respecto a la presentación de las películas. Éste alega en su escrito de oposición que la exclusión de la prensa coartaría significativamente su debido proceso de ley al impedirle llevar a cabo un contrainterrogatorio ininterrumpido. Según él, la única manera de contrainterrogar efectivamente a las demandantes conlleva presentar las películas simultáneamente, lo cual, de concederse la solicitud de las recurrentes, no podría llevarse a cabo sin constantes interrupciones, ya que la prensa tendría que entrar y salir de Sala continuamente cada vez que se presentaran las películas.

No estamos de acuerdo con el recurrido respecto a que la única manera de contrainterrogar a las recurrentes de manera efectiva conlleve necesariamente al mismo tiempo ver las películas. El procedimiento de vista en Cámara, antes detallado, le brinda al recurrido la oportunidad de presentar la película ininterrumpidamente y de referirse a ésta mediante minutas, una vez comience la vista en su fondo. Además, le brinda la opción adicional de solicitar la celebración de una vista posterior en Cámara si durante el transcurso del contrainterrogatorio surge alguna controversia sobre el contenido de las películas y el juez crea necesario presentarlas nuevamente.

En fin, la presentación de las películas en Cámara garantizará que los derechos constitucionales y estatutarios

de cada una de las partes interesadas queden debidamente protegidos e impedirá el uso y abuso de evidencia para satisfacer rencores personales o para provocar escándalos públicos.

## VIII

A modo de epílogo, reiteramos que con esta decisión no minimizamos ni limitamos el derecho a la intimidad, sino todo lo contrario. En el caso de marras, hemos protegido una violación patente al derecho a la intimidad de las peticionarias frente al interés público de conocer todos los detalles y pormenores del procedimiento judicial. No podemos, sin embargo, crear las condiciones jurídicas que viabilicen que unos derechos individuales en un caso dado avasallen los derechos dimanantes del interés público pertenecientes al conglomerado social.

Como dispusimos antes, no es suficiente reclamar que se ha lesionado el derecho a la intimidad pues, en todo caso, en mayor o menor grado, hay algún aspecto íntimo que se ventila. Hay que analizar la gravedad de esa lesión y, luego de someterla a un análisis de escrutinio estricto, decidir cuál debe prevalecer. Como dijimos en *Colón v. Romero Barceló*, supra, págs. 580–581, citando a Santos Briz:

"Toda lesión de la personalidad es antijurídica salvo que concurra una causa de justificación (legítima defensa, estado de necesidad, acción directa o autoayuda) o el consentimiento del ofendido que no sea contrario a las buenas costumbres. La antijuricidad queda también excluida cuando el acto se considera socialmente adecuado, es decir, conforme a derecho en atención a la ordenación ético social de la vida en común. El reconocimiento de la adecuación social como causa de justificación se opone también al peligro de una extensión excesiva de la protección de la personalidad. Ciertas lesiones de la personalidad son inevitables y han de ser toleradas cuando así lo imponga un criterio razonable de la vida social. Finalmente la antijuricidad del ataque puede ser excluida para salvaguardar intereses que merezcan una especial protección. Los intereses contrapuestos deben ser recíprocamente compulsados, en todos los casos de

antagonismo, según principios racionales. La infracción estará justificada únicamente cuando, atendiendo a consideraciones objetivas, el interés del agente público o privado sea de mayor valor o rango. Ha de atenderse al interés más alto cuando la infracción aparece objetivamente como necesaria e inevitable y según las circunstancias, contenido y forma aparece como el medio más indicado y adecuado para obtener, por medio del ataque llevado a cabo, una finalidad lícita y jurídica." (Citas omitidas y énfasis suprimido.)

Aplicado a la situación fáctica ante nos y en atención a ese balance reconocemos que si bien el interés público de acceso a los procedimientos queda servido con la presencia del público y la prensa en la etapa testifical —aunque se ventilen aspectos muy íntimos— debe ceder al momento de la exhibición de las películas, pues en ese momento el interés de las peticionarias de proteger su intimidad, vida privada, y evitar ataques abusivos a su honra, adquiere mayor importancia que el derecho a libre acceso.

Por los fundamentos que anteceden, *revocamos la determinación recurrida.*

*Se dictará la sentencia correspondiente.*

## — O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

Concurro con el resultado al que llega la mayoría en este caso. Para proteger el derecho a la intimidad invocado por las demandantes, el foro de instancia tiene el deber de excluir de su Sala tanto al público como a la prensa durante la presentación de unas películas en las cuales las demandantes aparecen sosteniendo relaciones sexuales con el demandado.

Lo anterior, no obstante, tengo serias reservas en cuanto al dictamen de la mayoría de que en nuestro ordenamiento jurídico existe una *garantía constitucional fundamental* de juicio público en *los procedimientos de natu-*

*raleza civil.* En su opinión, la mayoría afirma, por puro fíat y escuetamente, que "[a]unque nuestra Constitución sólo garantiza expresamente la apertura de los procedimientos de naturaleza criminal, *existe una garantía similar implícita respecto a los procedimientos de naturaleza civil*, consagrada en las cláusulas del debido proceso de ley y la libertad de expresión y prensa de nuestra Carta de Derechos". (Énfasis suplido.) Opinión mayoritaria, pág. 616. La mayoría no explica de modo alguno cómo es que las cláusulas de debido proceso de ley y de libertad de expresión y prensa de nuestra Constitución contienen tal garantía implícita. No se cita su historial ni alguna otra fuente pertinente de derecho para fundamentar adecuadamente su tajante aseveración. Más aún, la mayoría —en su opinión— aplica a casos *civiles* el esquema formulado por el Tribunal Supremo de Estados Unidos para limitar el acceso público *a juicios criminales.* El Supremo federal resolvió en *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982), que la garantía a favor del juicio público en casos *criminales* no es absoluta y que el acceso a dichos procedimientos puede limitarse si existe un interés apremiante que lo justifique (*necessitated by a compelling governmental interest*), y si la restricción al acceso se ciñe estrictamente a tal interés (*narrowly tailored to serve that interest*). *Globe Newspaper Co. v. Superior Court,* supra, págs. 607–608. En su opinión, la mayoría aplica precisamente esos dos estrictos criterios como condición para que en Puerto Rico se pueda limitar el acceso a procedimientos *civiles,* aunque nuestra propia Constitución no dispone que el juicio deba ser público en casos civiles ni el Tribunal Supremo federal *en caso alguno* ha establecido que exista una *garantía constitucional* de acceso público a tales procedimientos igual a la que ha reconocido para casos penales. La única fuente que cita la mayoría para sostener esta posición es su creencia de que el Tribunal Supremo de Estados Unidos resolvería en cuanto a procedimientos ci-

viles, lo mismo que ha resuelto en cuanto a los casos penales. Esta postura de la mayoría me parece desacertada. En primer lugar, fundamentar una determinación de índole constitucional únicamente sobre la base de lo que se anticipa que habrá de resolver el Supremo federal es una técnica que tiene visos de acertijo judicial, por ser especulativa. Más grave aún, se trata de un proceder que rebasa por mucho nuestra obligación respecto a las decisiones del Tribunal Supremo de Estados Unidos, según la fijamos en *R.C.A. v. Gobierno de la Capital*, 91 D.P.R. 416 (1964), y su progenie. Coarta, pues, nuestra relativa autonomía frente a tales dictámenes federales y limita las posibilidades de desarrollar un derecho constitucional con matices propiamente nuestros.[1]

Por otro lado, la postura que asume la mayoría en este caso es innecesaria para llegar al resultado al que llega; se formula sin una conceptualización normativa y teórica adecuada; es contraria a la política judicial de no decidir los casos ante nos sobre bases constitucionales si existen fundamentos de otra índole que permitan disponer de ellos y puede convertirse en una camisa de fuerza que impida limitar el acceso público en casos civiles en los cuales tal cosa esté justificada. Por todo ello, disiento de esta parte de la opinión.

## I

Estoy de acuerdo con que, *como principio general*, en una democracia todos los procedimientos gubernamentales deben estar abiertos al público y a la prensa. Ello es así ya

---

[1] En Estados Unidos ha surgido recientemente una tendencia hacia el desarrollo constitucional *estatal* autóctono. Si ello ha ocurrido allá, nosotros en Puerto Rico tenemos mayores razones que justifican un desenvolvimiento más propio. Véanse: H.A. Linde, *E Pluribus–Constitutional Theory and State Courts*, 18 Ga. L. Rev. 165 (1984); S.S. Abrahamson, *Criminal Law and State Constitutions: The Emergence of State Constitutional Law*, 63 Tex. L. Rev. 1141 (1985); Collins, *Reliance on State Constitutions (Developments in State Constitutional Law)*, B. McGraw ed. 1985.

que, *de ordinario*, el Gobierno, como mandatario del pueblo, no debe actuar en secreto o a espaldas de quién le ha delegado sus poderes y facultades. Además, el acceso público ayuda a que los procedimientos gubernamentales se realicen adecuadamente y a que se convalide la confianza de la gente en éstos. Sin embargo, hay situaciones concretas en las cuales no puede prevalecer el principio aludido porque existen y deben protegerse otros intereses legítimos del pueblo de mayor rango o jerarquía. Existen circunstancias particulares en las cuales es menester limitar el acceso público al procedimiento gubernamental para salvaguardar derechos y prerrogativas de las personas que integran la colectividad, que son más importantes que el principio general en cuestión.

Las situaciones o circunstancias aludidas antes surgen por razón del derecho fundamental a la intimidad que tiene toda persona en nuestro país. El derecho a la intimidad, que abarca un amplísimo campo y se aplica actualmente a eventos muy diversos, tiene, como se sabe, un historial y un alcance distinto en Puerto Rico al que tiene ese derecho en Estados Unidos. *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978); *E.L.A. v. Hermandad de Empleados*, 104 D.P.R. 436 (1975); *García Santiago v. Acosta*, 104 D.P.R. 321 (1975); *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734 (1975). En Puerto Rico la intromisión pública en la vida íntima o familiar de la persona privada sólo puede tolerarse cuando así lo requieran intereses públicos apremiantes.

La "constitucionalización" del acceso público a casos civiles que por fíat realiza la mayoría en el caso de autos pone en riesgo la protección particular que hasta ahora le habíamos reconocido en Puerto Rico al derecho a la intimidad, aunque la mayoría, reaccionando a nuestra posición, niegue tal posibilidad. En efecto, independientemente de su retórica defensiva, el hecho es que en su opinión en este caso la mayoría *invierte* conceptualmente el orden de jerar-

quía que hasta ahora tenía dicho derecho en nuestro propio ordenamiento constitucional. En nuestra jurisprudencia sobre el particular, para restringir el derecho a la intimidad se requería que existiese un interés público apremiante que así lo justificase. La protección del derecho fundamental a la intimidad era, hasta ahora, la regla general. A ésta se le podía hacer excepciones si existía una razón de tal magnitud que lo justificase. En su opinión en este caso, sin embargo, la mayoría consagra constitucionalmente el acceso público a los procedimientos civiles como la regla general y reduce el derecho fundamental a la intimidad a una posible excepción al acceso público referido. Al copiar aquí, para casos civiles, el esquema del Supremo federal sobre excepciones a la apertura de los juicios *criminales*, la mayoría —quiera que no— reduce el derecho a la intimidad de nuestro propio ordenamiento jurídico a una posible *excepción* al derecho más básico de apertura sin tomar en cuenta, de modo alguno, que en Puerto Rico el derecho a la intimidad ha tenido un sitial constitucional superior al que tiene ese derecho en la órbita federal, y sin tomar en cuenta, además, como discutiremos más adelante, que la situación de los casos civiles no es igual a la de los casos penales en el derecho federal ni en Puerto Rico. Cuando menos, al erigir por primera vez el acceso público a los casos civiles al rango de una garantía constitucional general, la mayoría reduce el peso o valor atribuible al derecho a la intimidad en el inevitable proceso de ponderar cuál de los intereses públicos apremiantes en conflicto debe prevalecer. Se menoscaba así la posición especial que el derecho a la intimidad habría ostentado, hasta ahora, en nuestro ordenamiento jurídico.

El menoscabo de la alta jerarquía que tenía nuestro derecho a la intimidad también ocurre por razón de la lista de asuntos que, según la mayoría, constituyen intereses apremiantes que justifican limitar el acceso público a los casos civiles. Para la mayoría, la "preservación de la inti-

midad" es uno de tales asuntos, así como lo es "la preservación de secretos de negocio". Es decir, la mayoría no sólo estima que la preservación de los secretos de negocios es un "interés apremiante" —lo que de por sí es sorprendente— sino que lo equipara con el derecho a la intimidad. Este derecho fundamental, que antes tenía el más alto rango constitucional, ahora queda igualado a un interés que, si bien es susceptible de protección, nunca ha tenido un rango de tal magnitud.(²)

La disminución normativa del derecho a la intimidad, que resulta del dictamen mayoritario en este caso, puede tener consecuencias prácticas serias. Un ejemplo claro de ello lo presentan los procedimientos de divorcio. En las jurisdicciones estatales sólo una minoría de los tribunales ha resuelto que la humillación y el bochorno sufridos por las partes, en algunos de estos procedimientos de divorcio, justifican que el juicio civil se lleve a cabo en privado. La mayoría de dichos tribunales han determinado que tales circunstancias no constituyen razón suficiente para negar acceso público al procedimiento de divorcio. La postura de estos tribunales delata una visión menguada del derecho a la intimidad.

En cambio, en Puerto Rico, donde ha prevalecido hasta ahora un derecho a la intimidad amplio y de gran jerarquía, se ha considerado que dicho derecho protege a las personas de tener que ventilar los aspectos íntimos de su vida marital ante los tribunales u otros foros. En efecto, en gran medida, para evitar las indignidades y hostilidades

---

(²) En Estados Unidos la protección de los secretos de negocios se desarrolló como parte del *derecho privado* en pleitos entre comerciantes. Se trata de una secuela de las normas que prohíben el enriquecimiento injusto y la competencia desleal. *No se trata de un interés de rango constitucional.* J.L. Nowaczewski, *The First Amendment Right of Access to Civil Trials after Globe Newspaper v. Superior Court*, 51 U. Chi. L. Rev. 286 (1984).

Resulta irónico que una de las fuentes principales que utiliza la mayoría para sostener su opinión cuestiona precisamente si los secretos de negocios son una categoría adecuada de "intereses apremiantes" que puedan oponerse a una garantía constitucional como la que se reconoce en este caso. Nowaczewski, *op. cit.*, págs. 302–306.

que conllevan muchas de las acciones de divorcio —lesivas del derecho a la intimidad— este Tribunal creó judicialmente la causal de divorcio por consentimiento mutuo en *Figueroa Ferrer v. E.L.A.*, supra. Sería una consecuencia obligada de nuestro dictamen en *Figueroa Ferrer v. E.L.A.*, supra, que aquellas personas que no pueden divorciarse por la causal de consentimiento mutuo, pero que tampoco desean revelar públicamente detalles íntimos de su vida familiar, tienen derecho a que el procedimiento de divorcio no esté abierto al público.

Sin embargo, la posición de la mayoría en el caso ante nos ahora, en efecto, elimina la posibilidad, en casos meritorios, de conducir juicios de divorcio en privado. Las fuentes jurídicas en que se basa la opinión de la mayoría así lo requieren. El menoscabo conceptual del derecho a la intimidad antes señalado nos ubica ahora junto con la mayoría de las jurisdicciones estatales que obligan siempre a ventilar la vida íntima de las personas en juicio público.

## II

El principio general sobre la apertura de los procedimientos gubernamentales, mencionado antes, presupone que en dichos procedimientos existe un grado sustancial de interés público. Es decir, para que aplique el principio referido, el procedimiento en cuestión debe involucrar o concernir a la colectividad de algún modo significativo. El ejemplo más claro de esto lo constituye el procedimiento penal. En los juicios criminales el promovente de la acción *siempre* es el pueblo mismo. Se juzga al acusado por una imputada conducta contra la colectividad. El Gobierno, en la persona del fiscal, actúa en nombre y en representación del pueblo. Por ello, es consustancial con el propio proceso que éste sea un *juicio público*. Tal, claro está, no es la naturaleza del juicio civil y, por ello, éste no puede equipararse totalmente con el procedimiento penal, como errada-

mente lo hace la mayoría en su opinión. Los procedimientos civiles son, con mucha frecuencia, pleitos estrictamente entre partes privadas. Como ha señalado un distinguido profesor de Derecho, basándose en los escritos del gran jurista Lon L. Fuller, "[t]he traditional model of civil adjudication in this country envisions private parties bringing a private dispute to a dispassionate arbiter". A. Miller, *Confidentialy, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 428, 431 (1991). En la mayor parte de los casos civiles, la colectividad se limita a proveer un foro neutral donde dilucidar la controversia privada, foro que las partes interesadas pueden usar o no. En estos casos resulta claro que no existe la justificación para un juicio público, que está presente en los casos criminales. Ciertamente no existen en estos casos las razones que justifican, digamos, la intromisión con la vida privada o familiar que puede encontrarse en los juicios criminales.

Así como la mayoría en su dictamen no alude a la importante diferencia que existe entre un procedimiento civil y uno penal, a los fines del asunto ante nos, la mayoría tampoco distingue entre los diversos tipos de interés público que pueden darse en los distintos procedimientos civiles y que pueden justificar, en diferentes grados, el acceso público a éstos. En algunos casos civiles, como cuando se disputa judicialmente, digamos, un resultado electoral, el interés público es claramente comparable al que existe en un juicio criminal, por lo que el derecho de acceso es incuestionable. En otros casos civiles, sin embargo, como cuando se trata de una disputa familiar entre partes puramente privadas, el interés público es bastante limitado, por lo que el derecho de acceso es cuestionable. Someter estos últimos a los estrictos criterios anunciados por la mayoría en su opinión es irrazonable. Como bien se ha señalado en la literatura erudita sobre el particular:

> Even when some "public interest" in the litigation exists, one must distinguish between the types of interest that range from

curiosity and voyeurism, such as that aroused when a lawsuit involves a celebrity or titillating gossip or scandal, to interest in matters of legitimate public concern, such as that involving the administration of public office or matters affecting public health and safety. The proposals to create a presumptive right of access draw no distinction between these two very different aspects of "public interest." Yet it is inappropriate as well as unseemly for courts to refuse to seal court records merely to provide the public with information comparable to that found in a supermarket tabloid. Miller, *supra*, pág. 467.

## III

En resumen, pues, al darle "rango constitucional", por puro fíat el acceso público a los casos civiles, la mayoría ha abierto una "caja de Pandora" que puede dar lugar a serias controversias y a que queden desamparados intereses particulares que ameritan protección jurídica. Ello, aparte de no estar fundado en una conceptualización normativa y teórica adecuada, es totalmente innecesario. El resultado concreto al que llega la mayoría —con el cual concurro— puede fundamentarse claramente y sin grandes complicaciones en la Regla 62.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Mediante ésta se protege el derecho de acceso público a los casos civiles, al disponerse como norma general que las vistas de dichos casos serán celebradas en corte abierta; pero muy razonablemente se deja a discreción del foro judicial para que en casos como el de marras el tribunal disponga lo contrario, según la naturaleza del procedimiento en cuestión. A la luz del claro y sabio mandato de la regla aludida, los pronunciamientos normativos que aparecen en la opinión mayoritaria en nada acrecentan nuestro propio acervo jurídico, más bien lo limitan. Es precisamente en casos como éste cuando se corrobora la sensatez y gran sentido jurídico de la norma formulada hace más de tres décadas en *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958), *reiterada recientemente en Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993), de no resolver las controversias judiciales sobre bases constitucionales cuando

existan fundamentos de otra índole que permitan disponer de las *referidas* controversias. Hoy hemos debido aplicar esta norma de autolimitación judicial. Como la mayoría ha optado por seguir otro curso de acción, que creo desacertado, no puedo estar en conformidad con su opinión.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

No podemos suscribir la opinión que emite una mayoría de los integrantes del Tribunal en el presente caso. La misma, no obstante aparentar defender los derechos de la prensa y del público en general a estar presente durante la celebración de los procesos civiles y criminales que se llevan a cabo en nuestro País, establece un peligroso precedente procesal que viola, precisamente, ese derecho. Veamos.

I

El Tribunal expresa que resulta ser de vital importancia para nuestro sistema de gobierno que el pueblo esté informado sobre lo que sucede, tanto en los procesos civiles como criminales; ello con el propósito de que ese pueblo pueda "fiscalizar" las actuaciones de sus gobernantes.

Por otro lado, expresa la mayoría que el *derecho* de la prensa, y el público en general, a tener libre acceso a los procedimientos judiciales está consagrado "en las cláusulas del debido proceso de ley y la libertad de expresión y prensa de nuestra Carta de Derechos" y/o el mismo es "... "consustancial a nuestro sistema democrático de gobierno". Opinión mayoritaria, pág. 616. Tan es así, sostiene la mayoría de los integrantes del Tribunal, que cualquier limitación a dicho *derecho* estará sujeta al, y deberá ser examinada a la luz del, estándar del "escrutinio estricto".

Dichas expresiones, dado lo que hace la mayoría inmediatamente, *resultan ser huecas y sin sustancia alguna.* Ello así ya que la Mayoría, a renglón seguido, *conculca o infringe* ese derecho *meramente* a base de unas *alegaciones* de las demandantes a los efectos de que ellas no consintieron a que sus aventuras amorosas o sexuales fueran filmadas por su pareja. Esto es, el Tribunal *erróneamente* protege el "derecho a la intimidad" de las demandantes *sin que se haya dilucidado plenariamente sus alegaciones y sin darle su "día en corte" a la prensa del País.*

Se olvida la mayoría de que el derecho de la prensa a participar de los procedimientos judiciales, *como representante de la ciudadanía,* responde a su función esencial de mantener a ésta bien informada de todos los asuntos oficiales de las tres (3) Ramas constitucionales de nuestro Gobierno. En específico en cuanto a la Rama Judicial, el *derecho de acceso* de la prensa a los procedimientos judiciales que se llevan a cabo en nuestro País *garantiza,* al mantenerla informada de lo acontecido en los mismos, *la representación y participación de la ciudadanía en estos procedimientos*; de esta manera alertando a los ciudadanos sobre cómo se conducen dichos procedimientos y permitiendo una *sana fiscalización* de lo allí acontecido por parte de éstos. Ello es *básico y fundamental* en un país democrático como el nuestro.

El error cometido por la mayoría en el presente caso, sin embargo, es aun más trágico. Ello así ya que la infracción al *derecho* de la prensa a estar presente en los procedimientos judiciales se lleva a efecto *sin* que a la prensa del País, *"dueña" del mismo,* se le dé su "día en corte". Esto es, la mayoría *impunemente viola* en el presente caso la cláusula del debido proceso de ley *tanto en su aspecto sustantivo como procesal.*(¹) La razón que brinda la mayoría, en el

---

(¹) El debido proceso de ley se proyecta en dos (2) vertientes, la sustantiva y la procesal. La vertiente sustantiva "persigue proteger y salvaguardar los derechos fundamentales de la persona". *Rodríguez Rodríguez v. E.L.A.,* 130 D.P.R. 562, 576

escolio número 2 de la opinión emitida, a los efectos de que los medios de comunicación no han solicitado intervención en el caso, *no* es *ni* satisfactoria *ni* convincente. En relación a ello, basta con decir que este Tribunal, en innumerables ocasiones, le ha concedido motu proprio término para comparecer, y exponer lo que a bien tengan, a "partes" que puedan resultar afectadas por sus decisiones; *ello en fiel obediencia al principio fundamental de rango constitucional de que no se le puede quitar un derecho a "persona" alguna sin que ésta haya tenido oportunidad de defenderlo.*

En cierto modo, *nos encontramos ante la ausencia de una "parte indispensable" sin cuya presencia no puede adjudicarse la controversia ante el foro judicial.* Como es sabido, una "parte indispensable" es aquella que, no habiendo sido traída al pleito, podría ver afectados sus *derechos o intereses* al momento de dictarse sentencia o resolución por el tribunal. *Rodríguez Rodríguez v. Moreno Rodríguez*, 135 D.P.R. 623 (1994); *Torres v. Alcalde Mun. de Carolina*, 135 D.P.R. 108 (1994).

Resulta obvio que en el presente caso el Tribunal priva a la prensa del País de su derecho a estar presente en *todas* las etapas de un proceso judicial *sin* haberle brindado a ésta una oportunidad eficaz de defender su derecho a ello. Lo verdaderamente lamentable de esta situación lo es que, al así actuar el Tribunal, *a quien verdaderamente está privando de ese derecho es al ciudadano común y corriente de este País, quien, al fin de cuentas, es la fuente original del derecho de la prensa a estar presente y a quien ésta representa en dichos procedimientos judiciales.*

En fin, la decisión mayoritaria hoy emitida es una no sólo errónea sino que contradictoria. La misma constituye un ejemplo clásico de una decisión emitida en el vacío y con total abstracción de la realidad de la situación de hechos

---

(1992). Por otro lado, la vertiente procesal "le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que en esencia sea justo y equitativo, que respete la dignidad de los individuos afectados". Íd., pág. 578.

ante nuestra consideración. *No* se puede resolver, con rectitud, cuando el que pretende hacerlo lo hace *sin* el debido conocimiento e información y *sin* que todas las partes indispensables en el pleito hayan sido traídas al mismo. Este caso, ni ningún otro, puede ser resuelto correctamente a base de unas meras alegaciones o conjeturas y en el vacío.

