La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
Corresponde preguntarnos si la peticionaria alberga un derecho a la intimidad sobre una grabación en videocinta, tomada sin su consentimiento, la cual expone imágenes suyas al desnudo, de modo que corresponda la devolución del vídeo a pesar de haber sido consignado en el tribunal por acuerdo transaccional suscrito por las partes en un pleito independiente al de autos. Este acuerdo fue objeto de una sentencia por estipulación.
I
Los hechos incontrovertidos son los siguientes: El Sr. Armando López Tristani (recurrido) presentó una demanda de divorcio y promovió un proceso criminal de adulterio contra su esposa, la Sra. Jeannette Maldonado Carrero (peticionaria),(1) luego de haber encontrado a ésta compartiendo con otra persona en el Apartamento L-101 del Condominio Castillo del Mar en Isla Verde. Al entrar al apartamento, el señor López Tristani, junto a su padre Armando López Ortiz y el detective privado Orlando Díaz (demandados), grabaron en vídeo las escenas que contienen imágenes del cuerpo desnudo de la peticionaria y se marcharon del lugar.
A raíz de lo acontecido, la señora Maldonado Carrero instó una demanda sobre interdicto preliminar y permanente. Alegó que los demandados entraron ilegalmente al apartamento localizado en Isla Verde, donde la *843 peticionaria albergaba una expectativa de intimidad por ser un lugar privado propiedad de sus padres, el Sr. Efrén Maldonado Pascual y la Sra. Jeannette Carrero Carrero. Además, la peticionaria reclamó la violación de sus derechos fundamentales reconocidos en la See. 8 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, por motivo de la grabación y reproducción del vídeo de su imagen sin autorización. Solicitó, inter alia, una orden de cese y desista para evitar la utilización y reproducción del vídeo, y una orden para la devolución a su persona del original y todas las copias que existieran de éste.
Durante la vista de interdicto provisional,(2) las representaciones legales de ambas partes se reunieron y convinieron en corte abierta las estipulaciones siguientes —las cuales fueron presentadas al tribunal mediante una moción a tales efectos e incorporadas a la sentencia dictada— a saber:(3)
A. Los codemandados López Tristani, Suárez Álvarez y Orlando Díaz declararon bajo juramento que del vídeo objeto de la presente demanda sólo existe un original y una copia.
B. Los codemandados López Tristani, López Ortiz y Tristani de López consignarían el 30 de agosto de 2005 en sobre sellado en el caso de divorcio, Armando López Tristani v. Jeannette Maldonado Carrero, Civil Núm. F DI2005-0635 (301), el original del v[í]deo y su copia. Este acuerdo fue en efecto cumplido.
*844 C. La parte demandada se obliga a no utilizar el v[í]deo original, ni copia alguna del mismo en ningún proceso civil y/o criminal. En cuanto al proceso criminal en contra de la parte demandante, el codemandado López Tristani hará las gestiones con la fiscalía para que no se utilice el vídeo como prueba.
D. En vista de estos acuerdos, la parte demandante desiste con perjuicio de la acción contra los codemandados López Tristani, López Ortiz y Tristani de López. No obstante, la parte demandante se reserva el derecho a presentar nuevamente la acción en contra de los codemandados, en el caso de que en algún proceso, sea civil o criminal que están pendientes o en cualquier otro que surja, o en cualquier lugar o publicación, se muestre o se utilice el v[í]deo objeto de esta acción, o las imágenes allí contenidas.
E. En cuanto a los codemandados Diosdado Suárez Álvarez y Orlando Díaz, la parte demandante desiste sin perjuicio.
F. Los codemandados Diosdado Suárez [Á]lvarez y Orlando Díaz, quienes comparecieron al Tribunal sin representación legal, declararon bajo juramento, junto al codemandado López Tristani, ratificando los acuerdos reducidos a escritos en la presente moción. (Énfasis nuestro.)
Como resultado de lo anterior, el controversial vídeo y su copia se consignaron en el tribunal en un sobre sellado en el pleito de divorcio. La sentencia por estipulación dictada advino final y firme.
De forma coetánea, en el caso de divorcio, la señora Maldonado Carrero solicitó el desglose y la devolución del vídeo que había sido consignado en dicho pleito. Sostuvo que no existía razón para que el tribunal lo mantuviese bajo su custodia, ya que éste no sería utilizado en ningún caso civil o criminal, ni siquiera en la denuncia presentada por adulterio. El señor López Tristani, por su parte, se opuso al desglose de los vídeos consignados, aduciendo que ello no formó parte del acuerdo a que llegaron las partes en la demanda de interdicto instada por la peticionaria.(4)
Evaluados los planteamientos de las partes, el tribunal de instancia dictó una orden en la que dispuso, escueta *845 mente, “que el vídeo aludido se mantendrá sellado y consignado en el tribunal”. Véase Orden del Tribunal de Primera Instancia de 7 de noviembre de 2005, Apéndice, pág. 16.
Inconforme con tal determinación, la peticionaria acudió al Tribunal de Apelaciones, el cual denegó la expedición del auto discrecional. En su resolución, el foro apelativo intermedio identificó la controversia por resolver como una controversia de naturaleza contractual. Al hacerlo así, concluyó que el señor López Tristani había cumplido con las estipulaciones acordadas entre las partes y determinó que la devolución del vídeo no había sido pactada en el acuerdo transaccional.
Insatisfecha, la señora Maldonado Carrero compareció ante nosotros y sostuvo que erró el Tribunal de Apelaciones al no ordenar la entrega del vídeo y su copia, ya que en el balance de intereses, correspondía su devolución por haber sido obtenido de forma ilegal y en violación de los derechos de intimidad y de su propia imagen, además de que no sería utilizado en ningún litigio civil o criminal.(5)
Concedimos un término a la parte recurrida para expresarse sobre el recurso de certiorari presentado y al Procurador General para que informara si el Ministerio Público tenía la intención de utilizar en evidencia el vídeo en controversia durante el juicio criminal. Contando con la comparecencia de ambas partes, con la del Procurador General, así como los autos originales en el caso de divorcio, estamos preparados para resolver y procedemos a hacerlo.
*846 II
A. En síntesis, la peticionaria alegó que, independientemente del acuerdo transaccional a que llegaron las partes, el vídeo y su copia le deben ser entregados debido a que la grabación de su persona se hizo sin su consentimiento, en violación a su derecho a la intimidad y a su propia imagen. Indicó, además, que el vídeo constituye un ataque a su honra y su dignidad. Estima que estos derechos superan por mucho cualquier interés que pueda tener el recurrido en ellos, o en que éstos permanezcan bajo custodia judicial. Sostiene que mantener el vídeo y su copia bajo custodia judicial no cumple propósito alguno, ya que no forman parte de la evidencia admitida o presentada en un caso, ni pueden ser utilizados en algún procedimiento judicial que se interese instar en su contra. Los planteamientos de la peticionaria son esencialmente idénticos a los esgrimidos en el pleito de interdicto instado, donde solicitó por primera vez la entrega de los controversiales vídeos.
Analicemos entonces los planteamientos de la peticionaria.
B. El acuerdo de transacción se rige en nuestro ordenamiento por lo dispuesto en el Art. 1709 y siguientes del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4821 et seq. Allí este negocio se define como aquel acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio. Rivera Rodríguez v. Rivera Reyes, 168 D.P.R. 193 (2006); Igaravidez v. Ricci, 147 D.P.R. 1, 5 (1998). Véanse: S. Tamayo Haya, El Contrato de Transacción, Madrid, Thomson-Civitas, 2003; L.R. Rivera Rivera, El contrato de transacción: sus efectos en situaciones de solidaridad, San Juan, Jurídica Editores, *847 1998; Q.M. Scaevola, Código Civil, Madrid, Reus, 1953, T. XXVIII, pág. 246.
Los elementos esenciales en este tipo de contrato son: (1) una relación jurídica litigiosa, (2) la intención de los contratantes de componer el litigio, es decir, de eliminar las controversias, y (3) las recíprocas concesiones de las partes. Ñeca Mortg. Corp. v. A&W Dev. S.E., 137 D.P.R. 860, 870 (1995).
Existen dos clases de contrato de transacción, el judicial y el extrajudicial. Ñeca Mortg. Corp. v. A. & W. Dev. S.E., supra, págs. 870-871. El acuerdo de transacción judicial, como el que nos ocupa, es aquel en el cual las partes acuerdan una transacción luego de haber comenzado el pleito judicial y solicitan incorporar el acuerdo al proceso en curso, poniendo fin así a la controversia que generó el litigio. La transacción judicial tiene para las partes autoridad de cosa juzgada, por lo tanto, las partes “tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre éstos”. Ñeca Mortg. Corp. v. A. & W. Dev. S.E., supra, pág. 872. Véase, además, Rivera Rodríguez v. Rivera Reyes, supra.
Por su naturaleza jurídica compleja, el contrato de transacción debe interpretarse de forma restrictiva. Sucn. Román v. Shelga Corp., 111 D.P.R. 782, 789 (1981). Hemos señalado que esto obedece a varias razones, entre las que se encuentra el hecho que las transacciones judiciales están “matizadas por ... mutuos sacrificios de régimen excepcional en algunos aspectos [y, por lo] tanto, no deben interpretarse con extensión, sino restrictivamente”. Rivera Rodríguez v. Rivera Reyes, supra, pág. 15. Para determinar la intención de las partes contratantes, se deben considerar los actos anteriores, coetáneos y posteriores al otorgamiento del contrato. Art. 1234 del Código Civil de *848 Puerto Rico, 31 L.P.R.A. see. 3472; Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 174 (1989).
De otra parte, la transacción sólo comprende “los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma”. Art. 1714 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4826. Véanse, además: Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. 503, 514 (1988); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 74-75 (1987); Sucn. Román v. Shelga Corp., supra.
El segundo párrafo del Art. 1714, supra, dispone que “[l]a renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre [la cual] ha recaído la transacción”. Este párrafo tiene el propósito principal de aplicar concretamente a la transacción las normas generales de la renuncia de derechos y de interpretación de contratos. Véanse: I. Sierra Gil de la Cuesta, Comentario del Código Civil, Barcelona, Ed. Bosch, 2000, T. 8, págs. 103-106; Scaevola, op. cit., pág. 162. Véanse, además: Tamayo Haya, op. cit., See. 7, págs. 510-557; Rivera Rivera, op. cit., Sec. 3.2.1, pág. 46.
Es un principio general que los derechos concedidos por las leyes, al igual que los de estirpe constitucional —como lo es el derecho a la intimidad— son renunciables. No obstante, para que se configure una renuncia válida al derecho constitucional a la intimidad, ésta tiene que ser patente, específica e inequívoca. A modo de ejemplo, en P.R. Tel. Co. v. Martínez, 114 D.P.R. 328, 343 (1983), resolvimos que la persona que accede y solicita judicialmente que su teléfono sea interceptado “incuestionablemente renuncia al derecho constitucional que le brinda la Sec. 10”.
En el caso de marras, la peticionaria reconoce la existencia del acuerdo de transacción y la sentencia dictada bajo los mismos términos. En éste, como indicamos, se con-vino la consignación en el tribunal del vídeo en controver *849 sia y su copia, con el propósito de evitar su utilización en los procedimientos judiciales instados y de impedir la divulgación y utilización de dicha grabación. No obstante, la peticionaria sostiene, como hemos apuntado ya, que tiene un derecho a que los vídeos se le entreguen, habida cuenta que éstos contienen su imagen desnuda y fueron grabados sin su consentimiento, por lo tanto, en violación a su derecho a la intimidad. Además, arguye que éstos carecen de valor forense alguno, ya que no se utilizarán en procedimiento judicial alguno.
Para atender el planteamiento hecho por la peticionaria, debemos examinar primeramente si ésta está protegida por la garantía constitucional a la intimidad en las circunstancias de este caso, para luego evaluar qué efecto tiene, si alguno, sobre su requerimiento, el acuerdo transaccional que puso fin a la demanda de interdicto instada por la peticionaria contra el aquí recurrido.
III
Las Secs. 1 y 8 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, protegen el derecho fundamental a la intimidad y dignidad de las personas.(6) Reiteradamente hemos expresado que este derecho, componente del derecho a la personalidad, goza de la más alta protección bajo nuestra Constitución y constituye un ámbito exento capaz de impedir o limitar la intervención de terceros —sean particulares o poderes públicos— contra la voluntad del titular.(7) Véase Castro v. *850 Tiendas Pitusa, 159 D.P.R. 650 (2003), y casos allí citados. Véase, además, R. De Ángel Yagüez, La protección de la personalidad en el derecho privado, 83 Rev. Der. Not. 1, 42 (enero-marzo 1974).
El carácter privilegiado y la primacía del derecho nos ha motivado a reconocer que la protección de lo privado opera ex propio vigore y puede hacerse valer entre personas privadas y eximirlas así del requisito de acción estatal. López v. E.L.A., 165 D.P.R. 280 (2005); Vega v. Telefónica, 156 D.P.R. 584, 600—601 (2002); Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 64 (1986); Colón v. Romero Barceló, 112 D.P.R. 573, 576 (1982); E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436, 440 (1975). Tal protección es necesaria no sólo para que se pueda lograr una adecuada paz social o colectiva, como hemos indicado en el pasado (viz. Arroyo v. Rattan Specialties, Inc., supra, pág. 62), sino también porque así logramos mantener una calidad mínima de la vida humana, al mantener un reducto de ésta fuera del alcance de terceros. "[L]a vida privada es esa esfera de cada existencia en la cual ninguno puede inmiscuirse sin haber sido invitado.” F. Herrero Tejedor, La intimidad como derecho fundamental, Madrid, Ed. Colex, 1998, pág. 20.
Este derecho constitucional, cuya violación puede ser reivindicada mediante el recurso de interdicto o mediante la correspondiente acción por daños,(8) impone a toda persona el deber de no inmiscuirse en la vida privada o familiar de los demás seres humanos. En el caso normativo, Colón v. Romero Barceló, supra, ampliamos la protección al derecho a la propia imagen,(9) como una modalidad *851 del derecho a la intimidad, cuya violación puede acarrear una reclamación en daños. Allí señalamos que “[e]n virtud de este derecho toda persona puede oponerse a que se reproduzca su efigie o se obtengan pruebas fotográficas de la misma, por personas a quienes no haya concedido autorización expresa o tácita”. íd., pág. 578. La imagen propia constituye un atributo fundamental con el cual se individualiza socialmente a la persona; es decir, es parte de la identidad personal. Como tal, es digna de tutela por su estrecha relación con la intimidad de la persona como con su honor. Véanse: J. Santos Briz, La Responsabilidad Civil, Madrid, Ed. Montecorvo, 1993, Vol. I, págs. 199-201; C. Fernández Sessarego, Derecho a la identidad personal, Buenos Aires, Ed. Astrea, 1992, Sec. 17, págs. 138-142.
Con gran acierto, Santos Briz apunta lo siguiente respecto al derecho a la propia imagen (citamos extensamente):
En virtud de este derecho toda persona puede oponerse a que se reproduzca su efigie o se obtengan pruebas fotográficas de la misma, por personas a quienes no haya concedido autorización expresa o tácita. Se extiende la prohibición a reproducir la imagen de otro ... y comprende no s[ó]lo la publicación de la imagen sino también la confección ... sin autorización cuando se oponga a legítimos intereses del afectado, en especial si según el objeto de la fotografía o el modo y forma de su obtención resulta escandalosa o tuvo lugar contra a la voluntad conocida del perjudicado. (Escolio omitido y énfasis nuestro.) J. Santos Briz, Derecho de Daños, Madrid, Ed. Rev. Der. Privado, 1963, pág. 178.
A pesar de que el derecho constitucional a la intimidad es de la más alta jerarquía en nuestro ordenamiento jurídico, no se concibe como un derecho absoluto *852 que “vence a todo otro valor en conflicto bajo todo supuesto concebible”. E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394, 401 (1983). Así pues, ante una alegación de violación a la intimidad, “[l]a cuestión central [por resolver] es si la persona tiene derecho a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete”. íd., pág. 402. Para hacer tal determinación, es necesario que concurran dos elementos: (1) el subjetivo, mediante el cual el reclamante, según las circunstancias del caso, alberga una expectativa real de que su intimidad se respete, y (2) el criterio objetivo, es decir, si la sociedad considera razonable tener tal expectativa. Pueblo v. Santiago Feliciano, 139 D.P.R. 361, 384 (1995).
A la luz de la normativa antes expuesta, analicemos las controversias planteadas en este caso.
rv
A. Iniciamos nuestra discusión señalando que el Procurador General en su comparecencia informó que el caso criminal contra la aquí peticionaria había sido sobreseído luego que el recurrido presentara, por derecho propio, una moción al tribunal, en la que informó que no tenía interés alguno en proseguir con éste, a lo que el Ministerio Público se allanó. El Tribunal de Primera Instancia, Sala Superior de Carolina, dictó sentencia en el caso criminal por adulterio, ordenando su archivo y sobreseimiento. Por tal razón, el vídeo que está en controversia en el presente caso no habrá de ser utilizado como evidencia en el caso criminal.
Por su parte, el señor López Tristani se opuso al desglose y entrega del referido vídeo, principalmente, bajo el fundamento de que no formó parte del acuerdo de transacción que dio base a la sentencia por estipulación en el caso instado por la peticionaria en su contra. Argüyó que la doctrina de actos propios y de la buena fe contractual apoya su posición. Además, sostuvo que la peticionaria no puede re *853 clamar violación a su derecho a la intimidad, pues él tiene un derecho de superior jerarquía, a saber: que su esposa le guarde fidelidad y no incurriera en la “causal de adulterio”. Concluyó entonces que no corresponde el desglose y entrega del vídeo y su copia.(10)
B. Indiscutiblemente, la grabación de la imagen desnuda de una persona sin su consentimiento, mientras se encuentra en un apartamento privado, se revela como una intromisión irrazonable en su intimidad y su honra. La peticionaria albergaba sin duda, en el lugar donde se encontraba, una expectativa real de que su intimidad iba a ser respetada; a todas luces, la expectativa es razonable. Esta expectativa de intimidad se antepone a los intereses articulados por el recurrido en este caso. Sostener lo contrario representaría un lamentable retroceso en la evolución vindicadora del respeto a la intimidad que ha caracterizado la trayectoria de este Tribunal.
La imagen desnuda de una persona constituye uno de los ámbitos más sagrados de la intimidad corporal. “El sentimiento profundo de discreción y de pudor que existe en el fondo de cada ser humano exige la protección de la vida privada. Sin ello no habría libertad .... [L]a vida privada está en el corazón de la libertad.” Herrero Tejedor, op. cit., pág. 20.(11)
Ya en Fulana de Tal v. Demandado A, 138 D.P.R. 610 (1995), nos habíamos enfrentado a una controversia que giraba en torno a la entrega de unos vídeos que reflejaban a las partes en ese caso sosteniendo relaciones sexuales, *854 los cuales habían sido grabados por el demandado sin el consentimiento de las demandantes. En dicho caso, aun cuando no discutimos el derecho a la propia imagen, resolvimos, ante un reclamo de la prensa de estar presente durante la presentación en evidencia de los vídeos, que los vídeos en controversia debían ser vistos en cámara para salvaguardar el derecho a la intimidad que cobijaba a las demandantes, frente al interés público de libre acceso a los procedimientos judiciales. Véanse, también: Bonilla Medina v. P.N.P., 140 D.P.R. 294, 301 (1996) (“el derecho a la propia imagen debe ceder ante el interés público de acceso a información”); Pérez Vda. Muñiz v. Criado, 151 D.P.R. 355, 371 (2000) (“el derecho a la intimidad ... no justifica la imposición de censura previa, máxima manifestación de la violación a la libertad de prensa”).
La posición axiológica privilegiada del derecho a la intimidad nos lleva a rechazar toda acción tendiente a espiar, vigilar y hostigar aspectos íntimos de la persona, como ha ocurrido en este caso. Aquí, como se señaló, el recurrido irrumpió en el apartamento en que se encontraba la peticionaria y, sin su autorización, grabó sus imágenes desnuda. Es insostenible que los avances tecnológicos se utilicen en perjuicio del derecho a la intimidad que albergan las personas. Reiteradamente hemos advertido de nuestro rechazo a que los adelantos en la tecnología se utilicen en detrimento de la integridad personal, la intimidad y la dignidad individual de las personas. Vega v. Telefónica, supra, págs. 607-608. Véase, además, Herrero Tejedor, op. cit, pág. 24 (“es unánime la denuncia de que las nuevas tecnologías suponen un serio peligro para la intimidad. La facilidad con que ésta puede verse hoy vulnerada va en aumento, a medida que avanzan, se perfec- . cionan y simplifican las técnicas de grabación, captación de imágenes, reproducción y transmisión de datos, etc.”). En Arroyo v. Rattan Specialties, supra, pág. 56, indicamos correctamente lo siguiente: “Tenemos el deber de canalizar *855 ... los desarrollos tecnológicos y científicos, de forma tal que derivemos sus beneficios sin que se le aseste un golpe mortal a lo más preciado en la vida de todo ser humano en una sociedad democrática: su dignidad, integridad e intimidad.”
Ahora bien, el derecho a la intimidad es renunciable como todo otro derecho. En tal sentido hemos señalado que para que tal renuncia sea válida y eficaz tiene que ser “patente, específica e inequívoca”. P.R. Tel. Co. v. Martínez, supra, pág. 343. Es decir, la renuncia debe ser clara, voluntaria y efectuada con pleno conocimiento de causa. U.T.I.E.R. v. A.E.E., 149 D.P.R. 498 (1999); Pueblo v. Morales Romero, 100 D.P.R. 436 (1972). Veamos entonces.
V
Como hemos visto, la peticionaria presentó una demanda de interdicto para solicitar la vindicación de su derecho a la intimidad ante la grabación de su imagen que efectuara el recurrido contra su voluntad. En la demanda ésta solicitó, no tan sólo que no se utilizara dicho vídeo en proceso judicial alguno o que no se reprodujera, sino también que se le entregara junto a cualquier copia hecha de éste. Durante este proceso, la peticionaria estuvo asesorada en todo momento por su representación legal. Como vimos inicialmente, en dicho caso las partes llegaron a un acuerdo transaccional para así finiquitar la controversia planteada en el caso y se acordó, de forma voluntaria, que el vídeo y su copia se consignaran en el tribunal. Surge del expediente que el tribunal de instancia cuestionó bajo juramento a las partes sobre los términos del acuerdo transaccional, cerciorándose de que estaban conformes con lo estipulado. Luego de lo cual dictó sentencia por estipulación, la cual advino final y firme.
La peticionaria no nos ha adelantado argumento alguno que nos permita concluir que no fue su intención poner fin *856 a la disputa de los vídeos mediante la consignación de éstos, sellados, en el tribunal. Cualquier reclamo que ella pudiese tener sobre la tenencia de los vídeos, fue abandonado una vez consintió válidamente a que éstos fuesen consignados en el tribunal como parte de la transacción a que llegó con el aquí recurrido en el pleito de interdicto que instó. Esta no puede ahora relitigar un asunto que fue objeto ya de la sentencia por estipulación y que hoy es final y firme. Además, nada hay en el expediente que nos permita concluir que al llegar a dicho acuerdo, renunciando a sus reclamos de carácter constitucional, su renuncia fue inválida por no ser voluntaria, clara o sin conocimiento de lo que acordaba. Repetimos, la peticionaria estuvo asesorada en todo momento por su representante legal y fue cuestionada sobre los términos acordados por el foro primario.
De otra parte, estimamos que al estar los vídeos consignados en sobre sellado en el tribunal fuera del acceso de terceros, su intimidad queda resguardada. El tribunal de primera instancia deberá tomar las medidas cautelares que estime necesarias para cerciorarse de que así sea. Los vídeos deberán permanecer en bóveda por espacio de un año, al cabo del cual se procederá a su destrucción conforme al procedimiento establecido para la disposición de expedientes judiciales y la evidencia que forma parte de éstos. Véase Reglas para la Administración del Programa de Disposición de Documentos de la Rama Judicial.
En esta coyuntura debemos expresar nuestra discrepancia con la opinión concurrente y disidente, y su valoración del contrato de transacción. En ésta se indica que la causa del acuerdo transactional fue “lograr que la peticionaria desistiera de la acción de interdicto que había presentado”, por lo que “ [1] a consignación de los vídeos no era la finalidad del negocio acordado entre las partes, sino una de las condiciones accesorias a la causa contractual”. Opinión concurrente y disidente, pág. 5. A base de lo anterior se sostiene que la “consignación era la prestación a la cual se *857 obligaron el recurrido y los demás codemandados en la acción del interdicto. La peticionaria no se obligó a consignar, sino que consintió a que el recurrido lo hiciera”. Id., pág. 6. Por ello no cabe hablar que la peticionaria haya hecho concesión recíproca alguna como parte de este acuerdo transaccional; en su consecuencia, no se configuró la renuncia a derecho constitucional alguno.
No compartimos esta visión fragmentada de qué constituye la causa en el contrato de transacción, por estimar que ésta no se ajusta a la doctrina prevaleciente sobre su naturaleza y, además, porque valora erróneamente el acuerdo transaccional habido en este litigio. Nos explicamos.
La delimitación de la causa típica del contrato de transacción no es tarea fácil ni libre de controversia entre la doctrina. Hay sin embargo aparente unanimidad respecto a aquella propuesta que sostiene que “la causa del contrato de transacción es la composición de la litis mediante una parcial renuncia a las recíprocas pretensiones”. E. López Barba, El contrato de transacción, su resolución por incumplimiento, Murcia, Ediciones Laborum, 2001, pág. 78. Esto supone que las recíprocas prestaciones constituyen no sólo el medio esencial para el desarrollo de la causa del negocio transaccional, sino que éstas pasan a formar parte de la propia causa. En tal sentido, la profesora Tamayo Haya, en su obra sobre la transacción, señala que
[no] es lícito afirmar que la causa se centre en el poner fin a una controversia, sino que debe complementarse necesariamente con las recíprocas concesiones. ... Es necesario siempre que ambas partes sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida.
En conjunto, el litigio y las recíprocas concesiones constituyen los elementos de la causa. (Énfasis nuestro.) Tamayo Haya, op. cit., pág. 210.
*858 De igual manera se expresa la profesora López Barba, cuando apunta:
Si bien el acuerdo de recíprocas concesiones es esencial para la perfección del contrato de transacción, no hay que olvidar que no es el único elemento de su causa, ...la causa del contrato de transacción la constituye de un lado el conflicto inicial de intereses cualificado que la provoca, de otro, el acuerdo de recíprocas concesiones que le sirve de medio y, por último, la voluntad de autocomponer el conflicto por las propias partes, afectadas, con el fin de dar término al proceso judicial en curso o evitar que éste dé comienzo. López Barba, op. cit., pág. 78. Véanse, además: M. Albaladejo García, Derecho Civil, lOma ed., Barcelona, Ed. Bosch, T. II, Vol. II, 1997, pág. 404; R. Ruggiero, Instituciones de Derecho Civil, Madrid, Ed. Reus, T. II, Vol. I, 1977. En igual sentido, véanse: STS 31 enero 1985 (A. 210); STS 21 octubre 1977 (A. 3904); STS 10 junio 1968 (A. 3179); STS 30 marzo 1950 (A. 573).
El conflicto inicial en este caso se generó, claramente, por la grabación en vídeo de la imagen desnuda de la peticionaria y la utilización que a los referidos vídeos se le daría. Como hemos discutido, el acuerdo transaccional en este caso pretendió ponerle fin al pleito de interdicto instado, generado por la controversia inicial que mencionamos.
Las partes en el litigio, para autocomponer el conflicto, acordaron las concesiones recíprocas siguientes: la peticionaria renunció a su reclamo sobre los vídeos, viz., que le fueran entregados, pues la grabación de éstos configuraba una violación a su derecho a la intimidad; el recurrido renunció a los derechos que alegaba le asistían sobre éstos, así como a utilizarlos como evidencia en los procedimientos judiciales pendientes (el pleito de divorcio y el proceso criminal). En consideración a lo anterior, los polémicos vídeos se consignaron en el tribunal, finiquitando así la controversia entre las partes. El conjunto de lo anterior constituye la causa del acuerdo transaccional convenido en este caso. Ciertamente, sin consignación no hubiera habido *859 transacción alguna. La consignación no puede considerarse como un mero acto accesorio, sin ulterior consecuencia.
No podemos perder de vista que las concesiones recíprocas ejemplifican el principio de que toda transacción
... supone sacrificios recíprocos, es decir, el abandono de una cosa, derecho o pretensión. ... Es necesario que cada uno de los contratantes reduzca y sacrifique en favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto de litigio .... Mueve por lo tanto, la transacción a cada una de las partes a ceder algo de sus derechos. Tamaya Haya, op. cit., pág. 141.(12)
La peticionaria renunció a su derecho a la intimidad al llegar al acuerdo transaccional que hemos discutido. Esta abandonó su reclamo de intimidad a cambio de que la parte demandada no retuviera los vídeos para sí y no los utilizara en los procedimientos judiciales pendientes en su contra al momento de acordar la transacción. Ello, como poco, constituye una inducción necesaria y lógica del acuerdo en cuestión.
En virtud de los fundamentos antes expresados, se ex-pide el auto solicitado y se dicta sentencia en la que se modifica la sentencia dictada por el Tribunal de Primera Instancia, para que se tomen las medidas cautelares que se entienda correspondan, para cerciorarse que terceros no tengan acceso al vídeo objeto de la presente controversia. Se dispone, además, que transcurrido un año, se procederá *860 con la destrucción de los vídeos conforme el procedimiento establecido para esos propósitos. Así modificada, se confirma la sentencia dictada. Se devuelve el caso al foro primario para que actúe conforme a lo aquí expresado.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta emitió una opinión concurrente y disidente.

 El Sr. Armando López Tristani presentó una demanda de divorcio por la causal de trato cruel y adulterio.

 Surge de la minuta de la vista de 29 de agosto de 2005, que el tribunal de instancia, luego de reunirse en cámara con los abogados de las partes, expresó que “[l]amenta haber hecho la digresión [sic] porque ciertamente no entiende que hay actitud ni ambiente entre las partes y sus abogados para ningún grado de racionalidad ni objetividad para manejar este asunto. Señala que la lectura de los documentos que obran en autos, le reflejan al tribunal que el incidente que se trae a la atención del tribunal es una consecuencia de una circunstancia mucho más amplia entre las partes aquí envueltas que debe mandatoriamente atenderse en otro foro de Relaciones de Familia, donde las partes pueden dilucidar sus problemas matrimoniales”. Apéndice, págs. 70-71.

 Véase Moción para que se Dicte Sentencia de Conformidad con la Regla 35 de Procedimiento Civil, presentada por la demandante Jeannette Maldonado Carrero el 24 de octubre de 2005, Apéndice, págs. 8-9.

 Mediante moción a tales efectos, la peticionaria reiteró sus planteamientos para la entrega del vídeo y, además, argumentó que su representación legal lo necesitaba para la preparación de su defensa en el procedimiento criminal instado en su contra. Véase Apéndice, págs. 53-55.

 El error fue planteado por la peticionaria de la manera siguiente:
“Erró el Tribunal de Apelaciones al resolver que no procedía la entrega del vídeo y su copia a la peticionaria bajo el fundamento de que ello no fue parte de las estipulaciones de las partes en el caso FPE 2005-0781. No obstante, no tomó en consideración que, en el balance de intereses, procedía su entrega a la peticionaria debido a que el vídeo fue obtenido de forma ilegal y en violación a los derechos de intimidad y al de la propia imagen, el mismo lo que contiene son imágenes de la peticionaria, no ha sido admitido como evidencia en el caso de divorcio y no será empleado ni admitido en el caso de divorcio ni en ningún otro litigio, civil o criminal, presente o futuro.” Petición de certiorari, pág. 6.

 El derecho a la intimidad está expresamente consagrado en la See. 8 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1, ed. 1999, pág. 317, el cual dispone que “[t]oda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar”. Por su parte, la Sec. 1 del Art. II de la Constitución, supra, establece la inviolabilidad de la dignidad del ser humano como principio básico que inspira los demás derechos incluidos en la Carta de Derechos. Vega v. Telefónica, 156 D.P.R. 584, 601-602 (2002).

 Véanse: R. Velázquez, Panorama general del derecho a la intimidad, 72 (Núm. 4) Rev. Jur. U.P.R. 665 (2003); R. Colón Cortés, Reconstruyendo la casa de *850 cristal: la responsabilidad civil extracontractual derivada de los daños ocasionados al derecho a la intimidad, 72 (Núm. 4) Rev. Jur. U.P.R. 695 (2003).

 P.R. Tel. Co. v. Martínez, 114 D.P.R. 328, 335 (1983); Colón v. Romero Barceló, 112 D.P.R. 573, 576 (1982); E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436, 447 (1975).

 El Informe de la Comisión de la Carta de Derechos remitido a la Convención Constituyente expresó sobre la See. 8 que “[s]e trata de la inviolabilidad personal en *851 su forma más completa y amplia [y que e]l honor y la intimidad son valores del individuo que merecen protección cabal, no sólo frente a atentados provenientes de otros particulares, sino también contra ingerencias abusivas de las autoridades”. La inviolabilidad de la persona se extiende a todo lo que es necesario para el desarrollo y expresión de ésta. 4 Diario de Sesiones de la Convención Constituyente 2566 (1961).

 También alegó que la peticionaria carece de legitimación activa para reclamar una expectativa de intimidad en el apartamento propiedad de sus padres. Debido a la conclusión a la que llegamos en esta ocasión, es innecesario discutir ese planteamiento.

 Véase L.J. Mieres Mieres, Intimidad personal y familiar: prontuario de jurisprudencia constitucional, Navarra, Ed. Aranzadi, 2002, pág. 51 (“El acoso y el hostigamiento lesionan nuestra intimidad territorial porque hay un espacio vital, una distancia necesaria que solo pueden franquear legítimamente quienes deseamos. La invasión inconsentida de ese espacio vital perturba nuestra libertad”).

 Cabe destacar que, aun cuando la ausencia de concesiones recíprocas supone que no nos encontramos ante una transacción verdadera por falta de causa, las concesiones no tienen que ser perfectamente equivalentes. La “reciprocidad no significa igualdad de los sacrificios consentidos. ... DE]1 móvil que determina la superación del conflicto puede determinar la desigualdad en las concesiones”. S. Tamayo Haya, El contrato de transacción, Madrid, Thomson-Civitas, 2002, pág. 159. Véase L.R. Rivera Rivera, El contrato de transacción: sus efectos en situaciones de solidaridad, San Juan, Jurídica Editores, 1998, pág. 45 (“Es importante recalcar que lo mismo pueden ser prestaciones aducidas en la controversia, que otro derecho no discutido. Tampoco es necesario que haya equivalencia entre las concesiones. Asimismo se ha reconocido que los sacrificios pueden ser de orden moral o tener contenido económico”). Véase, además, STS 14 marzo 1955 (A. 765).