El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
Hemos reconocido un derecho liberal de acceso a la información pública en poder del Estado. No obstante, también hemos reiterado que tal derecho no es absoluto y que cede en casos de imperativo interés público. En vista de ello, nos corresponde resolver si la norma de confidencialidad dispuesta en el Art. 15 de la Ley Núm. 77 de 25 de junio de 1964 (10 L.P.R.A. see. 271), conocida como la Ley de Monopolios y Restricción del Comercio, 10 L.P.R.A. sees. 257-274 (Ley Núm. 77), para la información obtenida durante una investigación efectuada por la Oficina de Asuntos Monopolísticos adscrita al Departamento de Justicia (Oficina de Monopolios) responde a un interés apremiante del Estado y si el alcance de dicha norma se justifica para proteger tal interés.
El apelante Caribbean Petroleum Corporation (Caribbean Petroleum) recurre de una sentencia del Tribunal de Apelaciones que concluyó que Manuel Colón Cabrera y Melba Correa Miranda (señor Colón Cabrera) tenían derecho a descubrir, tras un examen en cámara, la información producto de una investigación efectuada por la Oficina de *587 Monopolios contra varios distribuidores de gasolina, entre los que figuraba el demandado. Por entender que el Estado demostró tener un interés apremiante en investigar y procesar las violaciones a la Ley Núm. 77, modificamos la sentencia recurrida para que el Tribunal de Primera Instancia, luego de un examen en cámara y en ausencia de las partes, del expediente y del informe producto de la investigación realizada por la Oficina de Monopolios, ordene la divulgación de la información que sea pertinente, no sea de naturaleza privilegiada ni revele las técnicas de investigación del Departamento de Justicia o la identidad de los informantes. Asimismo, el tribunal no podrá divulgar la información que haya sido obtenida de las personas privadas sujetas al poder de investigación de la Oficina de Monopolios bajo el palio de confidencialidad. Resolvemos, por lo tanto, que el acceso limitado al que tiene derecho Colón Cabrera responde a los privilegios evidenciarios y al mandato legislativo recogido en el Art. 15 de la Ley Núm. 77, supra.
I
El señor Colón Cabrera arrendó a Caribbean Petroleum una propiedad inmueble sobre la cual enclava una estación de servicio de gasolina. Tras varias controversias entre las partes, el señor Colón Cabrera instó una acción por daños y perjuicios, e incumplimiento de contrato contra Caribbean Petroleum. Entre las alegaciones, incluyó una causa de acción al amparo de la Ley Núm. 77 por discrimen en precios.
Estando el caso pendiente de resolver ante el Tribunal de Primera Instancia, el Departamento de Justicia comunicó a los medios noticiosos del país que la Oficina de Monopolios había realizado una investigación sobre la industria de la gasolina. Dicha investigación reveló que los programas de incentivos de los distribuidores de gasolina *588 eran contrarios a los intereses de los detallistas y que violaban las disposiciones de la Ley Núm. 77. En atención a ello, y en aras de proteger el libre mercado, el Departamento de Justicia emitió órdenes de cese y desista contra los distribuidores y, además, presentó una querella ante el Departamento de Asuntos del Consumidor contra una de las compañías investigadas.
Al enterarse de estos hallazgos, el señor Colón Cabrera solicitó al Tribunal de Primera Instancia que ordenara al Departamento de Justicia entregarle una copia del estudio o informe con los resultados de la investigación, en particular lo concerniente a Caribbean Petroleum. Fundamentó su solicitud en que la información recopilada era pública al haber sido divulgada a los medios y que, además, era fundamental para probar sus alegaciones ante el tribunal.
Por su parte, Caribbean Petroleum se opuso a la solicitud a base de lo dispuesto en el Art. 15 de la Ley Núm. 77, supra, a los efectos de que toda información obtenida en el curso de una investigación civil efectuada por la Oficina de Monopolios debía mantenerse en estricta confidencialidad. De igual forma, el Departamento de Justicia se opuso mediante una comparecencia especial. Adujo que el acceso a la información tendría el efecto de obstaculizar la labor de investigación de la Oficina de Monopolios, ya que la mayor parte de la información obtenida es privilegiada y las personas la entregan voluntariamente bajo una expectativa de confidencialidad. El Tribunal de Primera Instancia acogió los planteamientos del Estado y denegó el acceso.
Inconforme, el señor Colón Cabrera presentó una solicitud de revisión ante el Tribunal de Apelaciones. En ella alegó que el foro de instancia debió permitirle el acceso, en consideración a su derecho constitucional a la libertad de expresión. Así las cosas, y luego de la comparecencia de las partes, el Tribunal de Apelaciones revocó la determinación recurrida y ordenó el acceso a los documentos, luego de efectuarse un examen en cámara con el fin de proteger *589 información privilegiada sobre otras compañías, la identidad de los informantes y las técnicas de investigación criminal. Sostuvo que en nuestro ordenamiento rige una norma liberal en cuanto al acceso a información pública en poder del Estado y que el Estado no demostró un interés apremiante que justificase la norma de confidencialidad dispuesta en la Ley Núm. 77.
De esta determinación Caribbean Petroleum apela ante nos y alega como único error que el señor Colón Cabrera no tenía derecho a inspeccionar los documentos en cámara. Sostiene que tal información es confidencial a tenor con lo dispuesto en el Art. 15 de la Ley Núm. 77, supra, y está cobijada por los privilegios evidenciarios establecidos en las Reglas 30 y 31 de Evidencia, 32 L.P.R.A. Ap. IV, relativos a los secretos de negocio y a la información oficial.
En vista de que el recurso plantea una cuestión novel y de alto interés público, resolvimos acoger el recurso como certiorari y acordamos expedir. Con el beneficio de la comparecencia de las partes, procedemos a resolver.
II
Consideramos, en primer lugar, si la información objeto de la solicitud puede catalogarse como información pública. Es necesario hacer esa determinación preliminar en vista de que, una vez un documento sea catalogado como público, cualquier ciudadano tiene derecho a solicitar su acceso sujeto a determinadas excepciones.
El Art. 1(b) de la Ley de Administración de Documentos Públicos de Puerto Rico, 3 L.P.R.A. sec. 1001(b), define documento público como “[t]odo documento que se origine, conserve, o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la see. 1002 de este título se haga conservar permanentemente o temporalmente *590 como prueba de las transacciones o por su valor legal”. Conforme a ello, resolvemos que la documentación recopilada y conservada como parte de una investigación efectuada por la Oficina de Monopolios satisface la definición antes transcrita.
Aclarado esto, concierne recordar que en Puerto Rico existe un derecho general de acceso a la información pública en poder del Estado. Tal derecho surge en virtud del Art. 409 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1781. Dicha disposición establece que “[t]odo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley”. El derecho de acceso a la información pública también surge como colorario del derecho a la libertad de expresión, ya que sin conocimiento de los hechos no hay posibilidad de expresión. Por lo tanto, resulta innegable que el acceso a la información constituye un componente importante de una sociedad democrática, en donde el ciudadano puede emitir un juicio informado sobre las actuaciones del Gobierno. Soto v. Srio. de Justicia, 112 D.P.R. 477 (1982); Noriega v. Gobernador, 130 D.P.R. 919 (1992).
En vista de la importancia que tiene el derecho a obtener información pública,(1) el Estado no puede negarse caprichosamente y de forma arbitraria a permitir su acceso. Ortiz v. Dir. Adm. de los Tribunales, 152 D.P.R. 161 (2000); Silva Iglecia v. F.E.I., 137 D.P.R. 821 (1995); López Vives v. Policía de P.R., 118 D.P.R. 219 (1987); Soto v. Srio. de Justicia, supra. Por lo tanto, dicha negativa debe estar fundamentada y justificada. De darse estas circunstancias, el Estado estaría legitimado para restringir el acceso de los ciudadanos a documentos de carácter público.
Si bien hemos reconocido —como norma general— que *591 se debe hacer un análisis liberal al atender una solicitud de acceso a la información custodiada por el Estado, debemos aclarar que tal derecho no puede ser absoluto. A tales efectos, hemos dejado abierta la puerta para que, llegado el momento, resolvamos sostener la confidencialidad de cierta información, dependiendo de los intereses implicados.
En nuestro ordenamiento no contamos con una legislación especial que disponga las excepciones en las que el Estado puede mantener ciertos documentos fuera del escrutinio público. Sin embargo, este Tribunal ha afirmado los supuestos en los que el Estado válidamente puede reclamar la confidencialidad, a saber, cuando: (1) una ley así lo declara-, (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente, y (5) sea información oficial conforme a la Regla 31 de Evidencia, supra. Angueira v. J.L.B.P., 150 D.P.R. 10 (2000). Para mantener la confidencialidad, el Estado tiene la carga de probar que satisface cualquiera de las excepciones antes enumeradas.
III
En este caso, la confidencialidad surge precisamente al amparo de una ley.(2) Resulta pertinente recordar nuestras expresiones en el caso Dávila v. Superintendente de Elecciones, 82 D.P.R. 264, 281 (1960), a los efectos de que para resolver que el derecho reconocido en el Art. 409 del Código *592 de Enjuiciamiento Civil, supra, no aplica a una clase determinada de documentos, no podemos menos que exigirle a la Asamblea Legislativa una orden clara y terminante. Entendemos que esta afirmación descansa en el hecho de que el legislador realizó un balance previo entre los intereses en conflicto: por un lado, el acceso a la información por un ciudadano y, por el otro, los interés del Estado en que determinada información permanezca fuera del escrutinio público. Por ende, reiteramos lo expresado en Santiago v. Bobb y El Mundo, Inc., 117 D.P.R. 153 (1986), a los efectos de que el medio más efectivo para salvaguardar la información sensitiva recopilada por el Estado en su gestión oficial es mediante legislación especial.
No cabe duda de que, con respecto a la información obtenida por la Oficina de Monopolios, el legislador dio una orden inequívoca de que permanecieran en estricta confidencialidad. A tales efectos, dispuso en el Art. 15 de la Ley Núm. 77, supra, que “[l]a información obtenida en el uso de las facultades otorgadas en esta sección se mantendrá en estricta confidencialidad, excepto en tanto sea necesaria usarla para fines de cualquier acción judicial por parte del estado”. (Énfasis suplido.) 10 L.P.R.A. see. 271.
No obstante, en nuestro ordenamiento la clara intención del legislador de mantener ciertos documentos bajo el palio de la confidencialidad no es suficiente. Así, toda etiqueta legislativa de confidencialidad debe evaluarse frente al invocado derecho de acceso a la información por el ciudadano. Soto v. Srio. de Justicia, supra. En vista de que tal derecho es de carácter fundamental, la legislación debe someterse a un análisis de escrutinio estricto. Al mismo tiempo, debe ser interpretada restrictivamente a favor del acceso. En síntesis, toda ley que pretenda ocultar información a un ciudadano bajo el palio de la confidencialidad tiene que justificarse a plenitud. Ello se satisface si la legislación: (1) cae dentro del poder constitucional del Gobierno; (2) propulsa un interés gubernamental importante *593 o sustancial; (3) el interés gubernamental no está relacionado con la supresión de la libre expresión, y (4) la restricción concomitante del derecho a la libre expresión no es mayor que la esencial para propulsar dicho interés. Ortiz v. Dir. Adm. de los Tribunales, supra; Angueira v. J.L.B.R, supra; Soto v. Srio. de Justicia, supra. Así pues, el Estado puede invocar el manto de secretividad en casos de imperativo interés público.
Por lo tanto, debemos examinar si el interés del Estado en este caso es lo suficientemente apremiante para justificar la norma de confidencialidad dispuesta en la Ley Núm. 77.
IV
De una lectura de la Exposición de Motivos de la Ley Núm. 77 (1964 Leyes de Puerto Rico 248) se desprende que su objetivo primordial fue evitar la concentración económica en un grupo reducido de personas.(3) En específico, se establece que
[e]s principio fundamental de la democracia puertorriqueña —como lo expresa la Constitución del Estado Libre Asociado de Puerto Rico— que la voluntad del pueblo es la fuente del poder público, concibiéndose el sistema democrático como aquel que asegura la libre participación del ciudadano en las decisiones colectivas.
No es compatible con esa aspiración democrática la concentración del poder económico en unas pocas personas y entidades, en forma tal que éstas se coloquen en posición de dominar áreas o sectores de la economía puertorriqueña .... (Enfasis suplido.) íd.
*594 Así, la Ley Núm. 77 se promulgó para evitar la “confabulación entre firmas para dominar el mercado, [el] acaparamiento de materias primas, [los] aumentos indebidos en los precios resultantes de una posición monopolística, [las] prácticas discriminatorias en las relaciones con clientes [y la] concentración extrema de la actividad económica y de la riqueza en algunos grandes consocios de empresas”.(4)
A esos fines, se delegó en la Oficina de Monopolios la labor de fiscalizar e investigar las prácticas monopolísticas. Mediante esa delegación, el legislador quiso do-tar al Estado con los instrumentos investigativos necesarios para identificar y erradicar las violaciones a la Ley Núm. 77. No cabe duda de que dichas facultades constituyen un componente fundamental en nuestra sociedad democrática, ya que la concentración del poder económico resulta en la concentración del poder político y social. Esto, indiscutiblemente, contradice la aspiración de un sistema en el que haya participación ciudadana en igualdad de condiciones. Así lo entendieron los propulsores de la Ley Núm. 77, al expresar que
... el pueblo [tiene que asegurarse] de que no han de germinar en Puerto Rico ... concentraciones de poder económico, para no correr el riesgo de que toda la vida económica del país pueda quedar a merced de un grupo reducido de personas que actúen movidas por su puro interés privado. Ante una situación de tal naturaleza, es difícil concebir que las decisiones colectivas vayan a tomarse verdaderamente a base de la libre participación de todos los ciudadanos.(5)
*595 Tomando en cuenta la dimensión del problema que quiso resolver la Asamblea Legislativa mediante la aprobación de la Ley Núm. 77 y, además, considerando que se trata de un asunto que incide sobre los cimientos de nuestra sociedad democrática, entendemos que los propósitos que subyacen dicha legislación son de la más alta jerarquía y constituyen un interés apremiante del Estado.
En su comparecencia, el Estado aduce, como fundamento para oponerse al reclamo de acceso a la información, que revelarla obstaculizaría las investigaciones futuras de la Oficina de Monopolios. Sostiene que tal conclusión se deriva del hecho de que las personas privadas, de ordinario, someten voluntariamente la información —que de otra manera no estaría accesible por ser en su mayoría privilegiada— con la expectativa de que se mantendrá en confidencia. Entendemos dicha preocupación.
Consideramos que al Estado le sería sumamente oneroso conseguir dicha información por otros medios. Sin la información que obtiene la Oficina de Monopolios como parte de una investigación, no se pueden lograr los objetivos de la Ley Núm. 77, los cuales —como mencionamos anteriormente— son de la más alta jerarquía. En otras palabras, un menoscabo a la facultad investigativa de la Oficina de Monopolios, como el presentado en este caso, incide sobre el interés apremiante de evitar la concentración económica en nuestro país al no poder el Estado poner en vigor las disposiciones de la Ley Núm. 77 con la efectividad y rapidez que se requiere.
Además, la confidencialidad se sostiene en atención a que la información obtenida contiene datos sensitivos sobre las prácticas y los métodos de mercadeo de las personas privadas sujetas al poder de investigación de la Oficina de Monopolios que, como norma general, no está accesible al público. En otras palabras, dichas personas revelan sus secretos de negocio con la certeza de que se mantendrán en estricta confidencialidad. En Fulana de Tal v. Demandado *596 A, 138 D.P.R. 610 (1995), sostuvimos que la preservación de secretos de negocio constituye un interés apremiante del Estado. Por ende, si permitimos el acceso a la información obtenida por la Oficina de Monopolios dicho interés se vería menoscabado.
En vista de lo anterior, el legislador ordenó mantener fuera del escrutinio público la información obtenida por la Oficina de Monopolios en el curso de una investigación. De una lectura del Art. 15 de la Ley Núm. 77, supra, surge que la confidencialidad establecida por virtud de dicha disposición se limita a la información que voluntariamente some-ten personas privadas a la Oficina de Monopolios bajo el palio de confidencialidad.
Ahora bien, en el expediente o informe producto de una investigación efectuada por la Oficina de Monopolios puede haber otro tipo de información, ya sea la proveniente de otras fuentes o la elaborada por la Oficina de Monopolios, que no está cobijada por la confidencialidad del Art. 15, supra, y es, por consiguiente, divulgable. Por “información elaborada” debe entenderse el producto o resultado de la investigación efectuada por la Oficina de Monopolios como, por ejemplo, las conclusiones, impresiones o interpretaciones hechas a partir de ella; es decir, la información contenida en cualquier documento, en el expediente o en el informe que sea resultado de un análisis atribuible a la propia Oficina de Monopolios.
En vista de lo anterior, el Tribunal de Primera Instancia debe realizar un examen en cámara y en ausencia de las partes con el fin de determinar lo que puede estar sujeto a divulgación. Así, el tribunal permitirá la divulgación de toda información pertinente, no privilegiada y que no revele técnicas de investigación del Departamento de Justicia o la identidad de informantes. El tribunal tampoco divulgará la información que haya sido obtenida por la Oficina de Monopolios de personas privadas bajo el palio de confidencialidad. En el caso de que dicha información *597 conste en el informe final o en el expediente producto de la investigación, el tribunal deberá tomar las medidas cautelares necesarias para salvaguardar la norma de confidencialidad que, como mencionamos anteriormente, contribuye a lograr los objetivos de la legislación antimonopolística.
En conclusión, resolvemos que el objetivo que promueve la Ley Núm. 77 constituye un interés apremiante capaz de sostener la norma de confidencialidad con respecto a la información obtenida de personas privadas durante una investigación efectuada por la Oficina de Monopolios.
V
Por los fundamentos que anteceden, se modifica la sentencia del Tribunal de Apelaciones para que al efectuar el examen en cámara, en ausencia de las partes, también se excluya la información obtenida de las personas privadas sujetas al poder de investigación de la Oficina de Monopolios. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rebollo López no intervino. La Juez Asociada Señora Rodríguez Rodríguez se inhibió.

 En la jurisdicción federal este derecho ha sido incorporado mediante legislación federal con el fin de someter a escrutinio público las operaciones de las agencias federales. Freedom of Information Act, 5 U.S.C.A. sec. 552 et seq.

 De hecho, en la legislación federal se establece, como una de las excepciones a la divulgación, los casos en los que se dispone la confidencialidad por virtud de una ley. Freedom of Information Act, supra.
Además, es oportuno señalar que en uno de los intentos por legislar sobre el acceso a la información pública (P. del S. 494 de 1973) se incluyó como excepción a la divulgación aquella materia dispuesta por una orden ejecutiva o por un mandato expreso de ley. E. Rivera Ramos, La libertad de información: necesidad de su reglamentación en Puerto Rico, 44 Rev. Jur. U.P.R. 67, 67—112 (1975).

 El Tribunal Supremo de Estados Unidos, explicando los propósitos de la legislación federal análoga, expresó: “the Sherman Act ... was a populist legislation which reacted to the increasing concentrations of economic power which followed on the heels of industrial revolution. The Sherman Act was the first legislation to deal with the problems of participation of small economic units in an economy increasingly dominated by economic titans.” National Broiler Marketing Assn. v. U.S., 436 U.S. 816, 829 (1978).

 Vista pública celebrada el 10 de marzo de 1964 sobre el P. de la C. 909, Monopolios, pág. 2.

6) Exposición de Motivos de la Ley Núm. 77 de 25 de junio de 1964, Leyes de Puerto Rico, pág. 248. A modo de comparación, muchos tribunales federales han expresado que el propósito principal de la legislación federal de monopolios es preservar un sistema de libre mercado en donde haya igual oportunidad de participación ciudadana. Véanse, por ejemplo: Glen Holly Entertainment v. Tektronix Inc., 343 F.3d 1000 (9no Cir. 2003); El Aguila Food Products, Inc. v. Gruma Corp, 301 F. Supp. 2d 612 (S.D. Tex. 2003); U.S. v. Syufy Enterprises, 903 F.2d 659 (9no Cir. 1990); Wei v. Bodner, 127 F.R.D. 91 (D. N.J. 1989); O’Neill v. Coca-Cola Co., 669 F. Supp. 217 (N.D. Ill. 1987); Rosenberg v. Cleary, Gottlieb, Steen & Hamilton, 598 F. Supp. 642 (S.D. N.Y. 1984).